UNITED STATES, Appellee

v

CAMMIE BROOKMAN, Corporal, U. S. Marine Corps, Appellant

7 USCMA 729, 23 CMR 193

No. 9008

Decided April 19, 1957

*Commander Earl C. Collins,* USN, argued the cause for Appellant, Accused.

*Major Verne L. Oliver,* USMC, argued the cause for Appellee, United States. With him on the brief was *Commander Edmund Burke, Jr.,* USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Were it not for the serious nature of the offenses charged, the circumstances of this case would be distinguished for their comic absurdity. The accused was confined in the post brig at Quantico, Virginia. On September 7, he and two other prisoners, Private E. B. Severson and Private D. W. Schacht, were sent out as a working party to the post theater. They were guarded by Private T. E. White. White was armed with a .45 caliber pistol.

While working at the theater, Severson told White that he had inherited $64,000.00 from his grandmother. The money was in the possession of his girl friend and could be obtained from her in Baltimore. He asked White if he would "go over the hill" for $32,000.00. White replied that he "probably would go over and come back and go over

again." Severson then told him that "h[e] and Schacht were going" to make an escape. White "studied" the matter "a minute" and agreed. Thereupon, the entire group left the theater through the rear exit. In formation, they marched to the parking lot adjoining the Post Infirmary. Pretending to police the area, they looked for a car. After a time, Severson called to them. He had found a ranch wagon in which the keys had been left hanging on the knob of the dashboard compartment. They got into the vehicle. The accused was the last to enter. With White driving, they left the post and proceeded toward White's home in Tuxedo, Maryland. In the District of Columbia the car ran out of gas and was abandoned.

The journey to White's home was completed on foot. Arriving there, the quartet changed into civilian clothes. They then hitchhiked to Baltimore. On North Howard Street in that city, Schacht and Severson stopped to talk to someone. White and the accused engaged in a separate conversation nearby. When they "turned around" Schacht and Severson "were gone." They searched for, but could not find, them. They stayed in Baltimore that night. The next morning each hitchhiked to his own home town. The accused stayed with his aunt. The following morning he surrendered to the local deputy sheriff, and eventually was returned to military control.

As a result of these events, a number of charges were filed against the accused. In addition to a charge of desertion, for which he had been originally confined, the accused was charged with a second act of desertion, conspiracy to commit an escape from confinement, the escape itself, and with the larceny of the ranch wagon. He was convicted of all the charges and sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for nine years, and reduction to the grade of private. The convening authority approved the findings of guilty, but modified the sentence by reducing the period of confinement to five years. The board of review set aside the findings of guilty of the conspiracy charge and further modified the sentence by reducing the confinement to two years. We granted review to consider a number of the accused's claims of error.

First, the accused contends that, except for the original desertion charge, none of the findings of guilty are supported by the evidence. This contention is predicated upon certain testimony at the trial given by both White and himself to the effect that he said that he "didn't want to go, that it wouldn't be a good idea." Purportedly, the accused's reluctance to accompany the others was motivated by fear. This fear, it is said, compelled the accused to do as the others did.

White testified that the accused "carried on with us because he was scared of what might happen after he got back to the brig." If that was the basis of the accused's fear, it was not a defense. A wrongdoer cannot shield himself from prosecution for a criminal act because he feared that he would be harmed by a person not present. State v Fisher, 23 Mont 557, 59 Pac 919; People v Martin, 13 Cal App 96, 105, 108 Pac 1034; Paris v State, 35 Tex Crim 82, 31 SW 855. There is some testimony by the accused that he was afraid of Severson and Schacht. However, he also testified that he was the last one to get into the car, and that no one told him that he would be hurt if he did not go "along" with the others. Moreover, he acknowledged that he "didn't make any effort not to go." This testimony does not establish duress as a matter of law. On the contrary, from what the accused both said and did, the court-martial could find that he willingly joined the others and that he entertained the criminal intent required for each of the offenses charged. We conclude, therefore, that the evidence is sufficient to support the findings of guilty.

For his second major claim of error, the accused contends that the instructions on his defense of duress were erroneous. The law officer advised the court members that duress was a de-

fense to the offenses charged. In part, he told them that the "coercion exerted upon the accused must have been of such a nature as to induce in him a well-grounded and reasonable apprehension that if he did not commit the offense, he would immediately be killed or would immediately suffer serious bodily injury." We recently approved a similar instruction in United States v Fleming, 7 USCMA 543, 23 CMR 7, and, indeed, the accused concedes its correctness insofar as it relates to the "most severe forms of felonies." However, he denies the correctness of the instruction as applied to the offenses charged. Cited in support of his argument is Commonwealth v Reffitt, 149 Ky 300, 148 SW 48. That case was concerned with the validity of a contract, and the court simply applied the flexible test for duress which obtains in noncriminal situations. Insofar as duress is recognized as a defense to a criminal act, the Kentucky Court of Appeals follows the general rule that the coercion must induce a well-grounded fear of immediate death or serious bodily harm. Nall v Commonwealth, 208 Ky 700, 271 SW 1059.

Our own research has uncovered no case which accepts less than the requirement of serious personal injury as a basis for the defense of duress in a criminal case. Perhaps closest to that view is Perryman v State, 63 Ga App 819, 12 SE 2d 388, in which the threat was "I will slap you down each time I see you." But in light of the Georgia statute, which requires injury to "life or member," and the trial judge's actual charge to the jury, it is doubtful whether even that case lends support to the accused's contention. Nevertheless, the argument is not without logical appeal. At least superficially, the normal test of duress seems inappropriate when applied to a simple disorder or some other offense which carries a very minor punishment. We need not, however, decide the question. Indisputably, all the offenses charged here are serious. The permissible punishment for each includes a dishonorable discharge. Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A. In United

States v Moore, 5 USCMA 687, 695–6, 18 CMR 311, we said that an offense, whether military or civilian in nature, which is "serious enough to bear the stigma of a dishonorable discharge possesses the seriousness of felony, and . . . bears a heavy content of moral turpitude." We hold, therefore, that the law officer's instructions on duress were legally correct.

Two other actions by the law officer are contested by the accused. First, he maintains that he was prejudiced by the advice the law officer gave to White in regard to his right to assert the privilege of self-incrimination. Assuming there are defects in the advice, they did not deprive the accused of any of his rights. Consequently, they cannot be the basis of a claim of prejudicial error as to him. United States v Murphy, 7 USCMA 32, 21 CMR 158; United States v Higgins, 6 USCMA 308, 20 CMR 24; cf. United States v Howard, 5 USCMA 186, 17 CMR 186. The other of the accused's contentions is that the law officer erred in failing to instruct the court-martial it could consider the lesser offense of wrongful appropriation in regard to the larceny charge. We also find no merit in this contention.

The ranch wagon was taken in Quantico, Virginia. It is stating the obvious to say the evidence shows that neither the accused nor any of his companions intended personally to return it to the owner. Can it be said that they expected to have someone else return it on their behalf? A vehicle can be taken for a limited purpose and thereafter be left at a place different from that of its taking without subjecting the taker to a charge of larceny. The surrounding circumstances, however, must indicate that the taker intends, and could reasonably expect, others to return the vehicle to the owner. See State v Ward, 19 Nev 297, 10 Pac 133. This is not such a case. The ranch wagon was abandoned on the streets of a large city, miles away from the place of its taking, and then only when it ran out of gasoline. The accused and his fellows also left some of their prison garb in the vehicle.

This fact emphasizes their complete disinterest in the fate of the vehicle. It is also significant that, although the accused testified at the trial, he did not directly or indirectly say that he intended to return the car to the owner. Instead, he based his defense exclusively on a denial of all responsibility for the taking. In this situation, we hold that the law officer did not err by failing to submit to the court-martial the lesser offense of wrongful appropriation. United States v Jackson, 4 USCMA 294, 15 CMR 294.

The decision of the board of review is affirmed.

Judges LATIMER and FERGUSON concur.