UNITED STATES, Appellee

v

REX WOOTEN, JUNIOR, Recruit, U. S. Army, Appellant

13 USCMA 171, 32 CMR 171

■■■■■

*First Lieutenant Thomas Stapleton* argued the cause for Appellant, Accused. With him on the brief was *Captain Ralph T. Smith.*

*Captain Alvin B. Fox* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

On the afternoon of May 21, 1961, an alert Texas Highway Patrolman stopped an automobile because it had no Texas safety inspection sticker. Investigation disclosed the car had been taken during the previous night from its owner in New Mexico. Further investigation led to the filing of a number of charges against the accused, including three specifications of larceny of an automobile, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The accused pleaded not guilty to the latter charges but was convicted as charged and sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year.

In this Court the accused challenges the refusal of the law officer to instruct the court-martial that on the evidence it could consider the lesser offense of wrongful appropriation as a reasonable alternative to each of the larceny specifications. Conversely, the Government contends that in each instance the evidence is susceptible only of the conclusion that the accused intended permanently to deprive the true owner of his automobile. As to specification 2, the accused admitted to a police officer that "everyone thought he had stolen" that car, but he insisted he only "had borrowed" it. This circumstance and other inferences that can be drawn from the evidence tend to indicate an intent by the accused to effect a return of the vehicle to the owner. However, the evidence relating to the other takings cannot reasonably be considered as indicating merely an intention to obtain a temporary means of transportation. The second car was also taken from the base without the owner's permission. It was a new Chevrolet still bearing temporary tags. The accused drove the vehicle until motor trouble, obviously occasioned by misuse, caused it to stop. Thereafter, he sought help in order to continue his journey, but the garage mechanics were unable to repair the damage. When accused was so apprised he was told, according to his written pretrial statement, "that the best thing to do was to call the man I got it from." Thereupon, the accused turned over the new car warranty which he found in the glove compartment. However, he did not give the garage operator his name or otherwise identify himself.

After leaving the garage, the accused hitchhiked to Deming, New Mexico. Here, he appropriated another car. In it, he and a companion proceeded east into Texas, where he was finally stopped by the Texas Highway Patrolman. Asked about the car, the accused at first lied about the ownership and his destination. The New Mexico license tags had been removed and replaced by

Texas plates; the original tags were found under the front seat.

The accused testified on the merits in his own behalf. His only claim was that he was "blacked out" during an interlude covering the period in which the three vehicles were taken. He said nothing about his intent in taking the Chevrolet and the New Mexico car. Nor do his statements introduced into evidence at trial indicate that these appropriations were intended to be temporary, rather than permanent. The evidence shows a consistent pattern of false stories as to ownership, and the use of false license plates. It clearly appears the accused was intent upon putting a good deal of distance between himself and the post, from which he had gone absent without authority, after admitting theft of a camera. In the light of this evidence, the law officer was justified in not instructing on wrongful appropriation as a lesser offense as to the last two autos. United States v Brookman, 7 USCMA 729, 23 CMR 193. In the *Brookman* case, the accused escaped from confinement. He and his companions took a vehicle to facilitate their flight. Rejecting an appellate contention that the evidence required an instruction on the lesser offense of wrongful appropriation, we said:

> "The ranch wagon was taken in Quantico, Virginia. It is stating the obvious to say the evidence shows that neither the accused nor any of his companions intended personally to return it to the owner. Can it be said that they expected to have someone else to return it on their behalf? A vehicle can be taken for a limited purpose and thereafter be left at a place different from that of its taking without subjecting the taker to a charge of larceny. The surrounding circumstances, however, must indicate that the taker intends, and could reasonable expect, others to return the vehicle to the owner. See State v Ward, 19 Nev 297, 10 Pac 133. This is not such a case. The ranch wagon was abandoned on the streets of a large city, miles away from the place of its taking, and then only when it ran out of gasoline. The accused and his fellows also left some of their prison garb in the vehicle. This fact emphasizes their complete disinterest in the fate of the vehicle. It is also significant that, although the accused testified at the trial, he did not directly or indirectly say that he intended to return the car to the owner. Instead, he based his defense exclusively on a denial of all responsibility for the taking. In this situation, we hold that the law officer did not err by failing to submit to the court-martial the lesser offense of wrongful appropriation."

The decision of the board of review as to specification 2, Charge II, is reversed. The record of trial is returned to The Judge Advocate General of the Army for submission to the board of review for reconsideration. In its discretion, the board of review may, as to specification 2, Charge II, approve findings of guilty of the lesser offense of wrongful appropriation, in violation of Article 121, supra, and reassess the sentence or take other action consistent with this opinion.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

In all respect, I must express my disagreement with my brothers' restrictive view of the evidence in this record and their conclusion that the lesser included offense of wrongful appropriation was not placed in issue. Intent is purely a mental phenomenon and when, as in this instance, the evidence is wholly circumstantial, I am of the view that we must look to all the facts in order to determine whether any reasonable inference of the intent temporarily to deprive an owner of his property is excluded. That is my understanding of our holding in United States v Brookman, 7 USCMA 729, 23 CMR 193, to which the Chief Judge adverts, and under the standard laid down in that case, it clearly appears that we should order reversal here.

The accused was arraigned and tried upon charges of absence without leave, in violation of Uniform Code of Mili-

tary Justice, Article 86, 10 USC § 886, and four specifications of larceny, in violation of Code, supra, Article 121, 10 USC § 921. He pleaded guilty to a count of larceny which averred the theft of another soldier's camera and not guilty to the remainder of the charges. He was nonetheless convicted of all charges and specifications and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Intermediate appellate authorities affirmed, and we granted accused's petition for review on the issue whether the law officer should have instructed the members of the court-martial concerning the lessor included offense of wrongful appropriation with respect to each contested specification of larceny.

The transcript of testimony discloses that the accused left his station at Fort Huachuca, Arizona, and went to the nearby town of Sierra Vista. After visiting a bowling alley, he entered an automobile parked on a used car lot and went to sleep. Approximately thirty minutes later, he woke up, found the vehicle's keys, and drove it back to his barracks. There, he began to load his belongings in it. A superior noncommissioned officer observed his actions, asked for the car keys, and removed the distributor rotor in order to immobilize the vehicle. Accused informed another enlisted superior that he had borrowed the car from a female acquaintance. The automobile bore an Illinois license tag. At the time accused took it from the used car lot, he had already executed a voluntary statement confessing to the camera theft to which he ultimately pleaded guilty.

Accused was restricted to the limits of his company area. Nevertheless, on the evening of May 20, he departed once more for Sierra Vista. According to his pretrial statement, he entered a 1961 Chevrolet sedan and "laid down for five or ten minutes." The keys were in the ignition, and accused drove the car away. He "started for" El Paso, Texas. En route, the automobile—a new vehicle—burst a radiator hose and overheated. Accused was towed to a nearby service station. There, he was informed that the car motor was se-

verely damaged and that "the best thing to do was to call the man I got it from." Accused obtained the automobile's warranty book from the glove compartment. It bore both the owner's name and that of the selling dealer. He handed it to the station attendant and "told him to call the garage and have them come and pick up the car."

Continuing his unauthorized odyssey, accused fell in with a civilian and hitchhiked to Deming, New Mexico. There, the two men took a parked 1959 sedan bearing Texas license plates and drove on to El Paso. Accused stated that he intended to go no further, but his companion persuaded him to continue, their ultimate destination apparently being Pennsylvania. They were apprehended in Dickens, Texas. A search of the vehicle disclosed a New Mexico license plate under the front seat. When the car was stopped, accused's companion was driving and identified himself by producing a dishonorable discharge certificate.

After the foregoing evidence was adduced, the law officer advised the court of the elements of the offenses charged, the principles of certain affirmative defenses, and gave the mandatory charge. The president of the court-martial specifically inquired whether there were any lesser included offenses involved, and the law officer replied that none had been placed in issue.

We have many times pointed out that the only distinction between larceny and wrongful appropriation is the specific intent involved. Code, supra, Article 121; United States v Geppert, 7 USCMA 741, 23 CMR 205; United States v Owens, 11 USCMA 88, 28 CMR 312. And whether the lesser included offense of wrongful appropriation is in issue depends in this case upon whether the members of the military jury might reasonably infer from the circumstances that accused intended only temporarily to deprive the owner of his vehicle rather than permanently to appropriate it to his own use. In short, the totality of the circumstances must exclude any rational possibility that accused intended—personally and specifically—that the owner not suffer a

permanent loss. And, as we said in *United States v Brookman, supra,* at page 732:

> ". . . A vehicle can be taken for a limited purpose and thereafter be left at a place different from that of its taking without subjecting the taker to a charge of larceny. The surrounding circumstances, however, must indicate that the taker intends, and could reasonably expect, others to return the vehicle to the owner. See *State v Ward*, 19 Nev 297, 10 Pac 133."

Evaluating the facts presented in the record before us, it seems clear beyond cavil that wrongful appropriation was placed in issue. Indeed, it is incongruous to hold that offense raised with respect to one automobile and not with respect to the other two vehicles, for the entire record discloses a consistently repetitive pattern of attempts to secure a wholly temporary means of transportation away from Fort Huachuca. Thus, the first automobile, which accused stated he "borrowed," was succeeded by the second when the former was immobilized by his superiors. And the third was taken only when the second was rendered useless by mechanical difficulties. Moreover, it is significant to me, with regard to the second vehicle, that accused himself presented the car's warranty book to the service station operator and directed him to call the automobile dealer who had sold the car to its real owner. Surely, it would be proper for the court members to infer from this circumstance that "the taker intends, and could reasonably expect, others to return the vehicle to the owner." *United States v Brookman, supra,* at page 732.

There is simply no other reason for an accused to make such arrangements, for a thief would not normally care whether the owner recovered his property. Of course, this is not to say that the court members must have accepted this version of the incident, but it should have been allowed to consider the evidence in light of proper instructions with regard to the lesser offense.

Finally, the third vehicle, taken in Deming, New Mexico, was, according to the accused, originally obtained only for a trip to El Paso. True it is that he was apprehended at a point beyond that city, but he stated that he was persuaded to go on by his passenger who, indeed, was driving the car at the moment of their apprehension. Once more, I suggest that the accused's conduct is such that the jury could fairly have inferred that he was availing himself of nothing more than a way to transport himself to Texas and could have rejected the idea that he sought permanently to take the automobile.

That the jury might have taken such a view of the proof before them is reinforced by the president's unusual inquiry concerning the existence of lesser offenses to the larceny charges. From his question to the law officer, it would seem that at least one member of the court entertained some misgivings concerning the status of accused's mind at the time of his takings and, in light of the evidence outlined above, I would conclude that the fact finders should have been permitted to measure his guilt by consideration both of the offenses charged and the lesser crimes of wrongful appropriation.

For the foregoing reasons, it is apparent that I would set aside the decision of the board of review. When my brothers affirm, I believe they in reality apply a measure which should be reserved for determining the sufficiency of the evidence rather than to conclude whether a lesser included offense is in issue. Were the former question before us, I would not hesitate to join with them. Unfortunately, it is the latter issue which we resolve, and I believe they err when they state that there is not in this record some evidence from which the military jury could have concluded that accused intended temporarily to deprive the various owners of their respective automobiles. In short, it is the intent and not the number of cars taken that should govern our resolution of the case.

I would reverse the decision of the board of review and remand the case with direction to approve the lesser of-

fense of wrongful appropriation under each count alleging theft of an automobile or to order a rehearing regarding these charges.