UNITED STATES

v.

**Airman Basic Christopher B. WASHINGTON, United States Air Force.**

**ACM S29797.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 11 Feb. 2000.

Decided 20 April 2001.

Appellate Counsel for Appellant: Lieutenant Colonel Timothy W. Murphy (argued), Colonel James R. Wise, and Major Maria A. Fried.

Appellate Counsel for the United States: Captain Christa S. Cothrel (argued); Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and Captain James C. Fraser.

Before YOUNG, Chief Judge, SCHLEGEL, and STARR, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Chief Judge:

Court members sentenced the appellant to a bad-conduct discharge and confinement for 2 months after convicting him of willful dis-

obedience of a superior commissioned officer's order to be inoculated with anthrax vaccine. Article 90, UCMJ, 10 U.S.C. § 890. The appellant has assigned five errors: (1) The military judge erred in precluding the defense from presenting the affirmative defenses of duress and necessity; (2) The appellant's conviction is legally and factually insufficient; (3) The military judge erred by denying the appellant sentencing credit for a prior nonjudicial punishment; (4) His sentence is inappropriately severe; and (5) Error on the personal data sheet resulted in post-trial error. We heard oral argument on the first and fourth issues at the United States Air Force Judge Advocate General's School, Maxwell Air Force Base, Alabama, on 4 April 2001. We affirm the findings and sentence.

## I. The Affirmative Defenses

After arraignment, the prosecution asked the military judge to determine the lawfulness of the commander's order to the appellant to be inoculated. The appellant affirmatively declined to oppose either the judge's ruling that the order was lawful or his intention to instruct the court members accordingly.

The prosecution also moved in limine to prevent the defense from litigating the safety and effectiveness of the anthrax vaccine. The defense objected, claiming such evidence was "central and material" to the appellant's defenses of necessity and duress. The defense wanted to submit the record of the congressional testimony of Major Sonnie Bates. The record included a list of military personnel whom Major Bates claimed experienced serious illness because of the vaccine. It also included the testimony of John B. Classen, M.D., and reports questioning the safety and effectiveness of the vaccine. The military judge ruled that the evidence did not raise either duress or necessity and granted the prosecution's motion.

The President recognizes the defense of coercion or duress in military law. Rule for Courts–Martial (R.C.M.) 916(h) provides as follows:

> *Coercion or duress.* It is a defense to any offense except killing an innocent person that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

The appellant asserts that the military judge erred in reaching his decision by considering the common law definitions of duress and necessity instead of restricting himself to that provided in R.C.M. 916(h). He claims the proffered evidence was sufficient to raise the defenses and the military judge erred by refusing to permit the appellant to present such defenses. The United States insists that R.C.M. 916(h) cannot be read literally because to do so would cause absurd results. *See Church of The Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

The President may prescribe "[p]retrial, trial, and post-trial procedures, including modes of proof." Article 36(a), 10 U.S.C. § 836(a). But, "the President's rule-making authority does not extend to matters of substantive military criminal law." *Ellis v. Jacob*, 26 M.J. 90, 92 (C.M.A.1988). "Nonetheless, where the President unambiguously gives an accused greater rights than those conveyed by higher sources, [the United States Court of Appeals for the Armed Forces (CAAF)] should abide by that decision unless it clearly contradicts the express language of the Code." *United States v. Davis*, 47 M.J. 484, 486 (1998).

The defenses of duress and necessity are closely related. *United States v. Rockwood*, 52 M.J. 98, 112 (1999) (citing 1 Wayne R. LaFave & Austin W. Scott Jr., *Substantive Criminal Law* 631 (1986)), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1173, 145 L.Ed.2d 1081 (2000); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 1065 (3d ed.1982). They are both based on the same public policy considerations—an accused is justified in committing a criminal act "because he has

thereby avoided a harm of greater magnitude." 1 LaFave & Scott, *supra,* at 615, 627.

At common law, the defense of duress involved

[a] person's *unlawful threat* (1) which causes the [accused] reasonably to believe that the only way to avoid imminent death or serious bodily injury to himself or to another is to engage in conduct which violates the literal terms of the criminal law, and (2) which causes the [accused] to engage in that conduct, gives the [accused] the defense of duress (sometimes called compulsion or coercion) to the crime in question unless that crime consists of intentionally killing an innocent third person.

*Id.* at 614 (emphasis added). *See United States v. Bailey,* 444 U.S. 394, 400, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

"One who, under the pressure of circumstances, commits what would otherwise be a crime may be justified by 'necessity' in doing as he did and so not be guilty of the crime in question." 1 LaFave & Scott, *supra,* at 627–28. *See* Perkins & Boyce, *supra,* at 1065. The accused's "belief that his actions were necessary must have been reasonable, and there must have been no alternative that would have caused lesser harm." *Rockwood,* 52 M.J. at 112 (citing 1 LaFave & Scott, *supra,* at 635, 638). Traditionally, the defense of necessity did not involve a person who unlawfully threatened another. Rather, the pressure came from the physical forces of nature. 1 LaFave & Scott, *supra,* at 628.

The defense of duress has long been recognized in military law. *See* William Winthrop, *Military Law and Precedents* 635 (2d ed.1920 reprint) (stating that defense of duress to charge of giving intelligence to the enemy was not unusual). The defense of necessity has never been formally recognized in military law, although our superior court has suggested that it would be available in "situations not involving the flouting of military authority." *United States v. Rockwood,* 52 M.J. 98, 113 n. 17 (1999).

The defense of duress or coercion did not appear in the *Manual for Courts–Martial, United States (MCM), 1951.* As a result of two decisions by the Court of Military Appeals, *United States v. Brookman,* 23 C.M.R. 193, 1957 WL 4459 (C.M.A.1957) and *United States v. Fleming,* 23 C.M.R. 7, 1957 WL 4422 (C.M.A.1957), the defense of duress was recognized in the *MCM, 1969* (Revised ed.), ¶ 216 *f.* Department of the Army Pamphlet 27–2, *Analysis of Contents, Manual for Courts–Martial, United States, 1969, Revised Edition,* ¶ 216 *f* (Jul 1970). The Court, however, did not fully discuss the defense of coercion or duress in either of these opinions. Instead, the Court focused on portions of the military judge's duress instruction and held that the military judge did not err in giving those instructions.

As originally promulgated by the President, the defense of coercion or duress in the military was recognized "to the degree of coercion or duress recognized in law as a defense." *MCM, 1969* (Revised ed.), ¶ 216 *f.* Apparently, the President meant to authorize the defense to the extent of the federal law. *See* Article 36(a), UCMJ, 10 U.S.C. § 836(a) (granting President authority to prescribe court-martial procedures, including modes of proof, "which shall, so far as he considers practicable, apply the principles of law … generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with [the UCMJ]"). While the most recent iteration of the defense in R.C.M. 916(h) no longer contains the same restriction, there is no evidence the President meant to abandon the federal common law definition. In fact, the current rule is based on that found in *MCM, 1969* (Revised ed.) ¶ 216 *f.* Drafters' Analysis, *MCM,* A21–63 (2000 ed.). Furthermore, the CAAF has suggested that the military defense of coercion and duress is based on the common law rule. *See Rockwood,* 52 M.J. at 112–13 (explaining defenses of duress and necessity by reference to 1 LaFave & Scott, *supra* and Perkins & Boyce, *supra*).

■ The defenses of duress and necessity are matters of substantive criminal law over which the President's rule-making authority does not extend. *See Ellis,* 26 M.J. at 92. Although R.C.M. 916(h) does not clearly contradict the express language of the UCMJ, we are convinced the President did not "unambiguously" grant, or intend to

grant, an accused greater rights than those conveyed by the Constitution or statute. *See Davis*, 47 M.J. at 486. We hold that the President, by promulgating R.C.M. 916(h), meant only to incorporate the federal common law concept of duress into military practice. By specifically declining to object to the military judge's determination, as a matter of law, that the order was lawful, the appellant conceded that he was not under an unlawful threat. Therefore, the defense of duress was not available to him.

■ While our superior court has suggested that the defense of necessity may be available in military law under some limited circumstances, this is not such a case. Military personnel are inoculated to protect them personally, and as part of a fighting unit, so they can perform the mission under adverse conditions. The appellant's refusal to be inoculated is a direct flouting of military authority and detracted from the ability of his unit to perform its mission.

■ A military accused cannot justify his disobedience of a lawful order by asserting that his health would be jeopardized. Putting one's life on the line for the sake of the mission is the very essence of military duty. If military personnel were able to refuse the lawful orders of their superiors because of the risk of injury or death, we would no longer have a cohesive military organization able to perform the military mission, just a group of individuals who may decide their own personal well-being comes before that of their unit or their country.

## II. Legal and Factual Sufficiency

■ The appellant claims that his conviction is factually and legally insufficient because the prosecution "failed to introduce any specific evidence to show that appellant received any education regarding the anthrax vaccine." He asserts that the " 'fact' that the appellant received counseling regarding the safety and efficacy of the anthrax vaccination was a necessary predicate to a determination that the order was 'lawful.' " The defense claims this Court's "unique fact-finding power provides the Appellant his last chance to rely upon a presumption of innocence." *United States v. Mason*, ACM 3105, unpub.

op. at 4 (A.F. Ct.Crim.App. 27 Feb 1996) (Dixon, C.J., concurring), *aff'd*, 45 M.J. 483 (1997). We disagree.

Before court members vote on the findings, the military judge must instruct them that "the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt." Article 51(c)(1), UCMJ, 10 U.S.C. § 851(c)(1). Courts of criminal appeals have a different charter. In any case referred to it, a court of criminal appeals

> may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The Supreme Court of the United States has concluded that the language of Article 66(c) has a clear meaning. "Were the words themselves unclear, the teachings from the legislative history of the section would compel the same result." *Jackson v. Taylor*, 353 U.S. 569, 576, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957) (holding Article 66(c), UCMJ, gives boards of review, now courts of criminal appeals, authority to reassess sentences). The legislative history referred to in *Jackson* includes the following language: "The Board of Review *shall* affirm a finding of guilty of an offense or a lesser included offense (see art. 59) if it determines that the finding *conforms to the weight of the evidence* and that there has been no error of law which prejudices the substantial rights of the accused. (See art. 59 commentary.)" Senate Comm. on Armed Services, Establishing a Uniform Code of Military Justice, S.Rep. No. 81–486, at 28 (1949); House Comm. on Armed Services, Uniform Code of Military Justice, H.R.Rep. No. 81–491, at 31–32 (1949) (emphasis added).

"Conforms to the weight of the evidence" is a phrase that has been used sparingly in American jurisprudence, but appears to be

synonymous with the preponderance of the evidence. *See, e.g., Montgomery Ward & Co. v. United States,* 61 C.C.P.A. 101, 499 F.2d 1283, 1285 (C.C.P.A.1974). "Weight of the evidence" has been defined as "[t]he balance or preponderance of the evidence; the inclination of the greater amount of credible evidence, offered in a trial to support one side on the issue rather than the other." *Black's Law Dictionary* 1594 (6th ed.1990). Congress clearly intended the service courts of criminal appeals to affirm the trial court's findings if there was no legal error prejudicial to the substantial rights of the accused and the weight of the credible evidence for conviction outweighed that for acquittal. There is no legal support whatsoever for the appellant's contention that he is presumed innocent while his case is on appeal before this Court. While we examine every record that comes before us for legal and factual sufficiency, we do not presume the appellant to be innocent. "Once [an accused] has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera v. Collins,* 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

■ The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable fact-finder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Our superior court has decreed that the test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, the Court is convinced of the appellant's guilt beyond a reasonable doubt. *Id.* at 325 (without citation to any authority). This obviously conflicts with the test Congress intended us to apply.

The elements of the offense of willfully disobeying a lawful command of a superior commissioned officer are as follows:

(1) That the accused received a lawful command from a certain commissioned officer;

(2) That this officer was the superior commissioned officer of the accused;

(3) That the accused then knew that this officer was the accused's superior commissioned officer; and

(4) That the accused willfully disobeyed the lawful command.

■ The appellant claims the prosecution failed to submit evidence to show that he received any education establishing the efficacy of the anthrax vaccine, and such evidence was required to establish the lawfulness of the commander's order for him to be inoculated. No such requirement exists. Even if it does, the defense waived the issue by specifically declining to object when the military judge ruled that the order to be vaccinated was lawful, or later when he so instructed the court members. The findings are legally sufficient. Whether we apply the congressionally mandated test for factual sufficiency or that imposed upon us by our superior court, the evidence is factually sufficient to sustain the appellant's conviction.

### III. Sentencing Credit for a Prior Article 15

■ On 21 December 1999, the commander ordered the appellant to receive the vaccination within "one calendar day" of receipt of the order. On 22 December, the appellant refused to get the vaccination and was punished pursuant to Article 15, UCMJ. 10 U.S.C. § 815. On 7 January 2000, the appellant was given another order to receive the vaccination "within 24 hours." On 8 January 2000, the appellant refused to be inoculated.

At trial, the appellant claimed his court-martial sentence should be reduced by the punishment he received pursuant to Article 15, UCMJ, 10 U.S.C. § 815, for the same offense. *See United States v. Pierce,* 27 M.J. 367 (C.M.A.1989). The military judge found that, although the issue was the same—disobeying the command of a superior commissioned officer to be inoculated with the anthrax vaccine—the offense for which the appellant was tried was a separate incident from the one for which he received nonjudicial punishment.

The appellant would have us find that once he is punished for disobeying an order, his superiors are without recourse to get him to comply with the duty they imposed on him. We disagree. Clearly these were separate orders that the appellant disobeyed; he can be punished separately for each.

### IV. Severity of the Sentence

The appellant asserts that his sentence is inappropriately severe because he is the only individual in the Air Force to receive a punitive discharge for refusing to receive the anthrax vaccination while others who refused, sometimes repeatedly, were administratively separated.

This Court may affirm only such part or amount of the sentence as we find correct in law and fact and determine on the basis of the entire record should be approved. Article 66(c), UCMJ. The purpose of Article 66(c) is to ensure "that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988). We do so by giving individualized consideration to the appellant based on "the nature and seriousness of the offense and the character of the offender." *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982) (quoting *United States v. Mamaluy,* 27 C.M.R. 176, 180–81, 1959 WL 3587 (C.M.A.1959)). We are not authorized to grant clemency. *Healy,* 26 M.J. at 396.

In enacting Article 66, Congress "contemplated that [our authority to review sentences would] be exercised to establish uniformity of sentences throughout the armed forces." Senate Comm. on Armed Services, Establishing a Uniform Code of Military Justice, S.Rep. No. 81–486, at 29 (1949); House Comm. on Armed Services, Uniform Code of Military Justice, H.R.Rep. No. 81–491, at 31–32 (1949). *See United States v. Olinger,* 12 M.J. 458, 461 (C.M.A.1982) (Fletcher, J.) (quoting *United States v. Judd,* 28 C.M.R. 388, 394, 1960 WL 4443 (C.M.A.1960) (Ferguson, J., concurring in the result)) *quoted in United States v. Lacy,* 50 M.J. 286, 288 (1999). However, Congress "hoped to attain *relative* uniformity rather than an arithmetically averaged sentence." *Judd,* 28 C.M.R.

at 394 (Ferguson, J., concurring in the result) (emphasis in original).

Normally, we do not engage in comparing the sentence of one accused with those of others "except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A.1985). The appellant bears the burden of demonstrating that any cited cases are "closely related" and "highly disparate." *United States v. Lacy,* 50 M.J. at 288. The appellant has failed to produce any evidence that his case is closely related to any of the cited cases.

Absent evidence of "a discriminatory or otherwise illegal prosecution or referral," we will not compare the disposition of an appellant's case with that of persons whose cases were not referred to trial. *United States v. Noble,* 50 M.J. 293, 295 (1999). However, "[g]iven the broad and highly discretionary authority of the Courts of Criminal Appeals on the issue of sentence appropriateness, an appellant may bring to the attention of those courts other cases with differing disposition decisions" for "such consideration as the experienced and mature judges of those courts deem appropriate." *Id.*

In the typical case, we need no help in determining an appropriate sentence. "[T]he experienced and professional military lawyers who find themselves appointed as ... judges on the courts of [criminal appeals] have a solid feel for the range of punishments typically meted out in courts-martial." *Ballard,* 20 M.J. at 286. In this rare instance, we admitted a summary of the dispositions of other anthrax cases because this is the first such case to reach our Court and we know that only a few such cases have been referred to trial by court-martial.

Disciplinary action for refusal to take the anthrax vaccination was taken in just over 150 Air Force cases. Some of those cases, like the appellant's, involved repeat offenders. Only eight other cases were referred to trial by court-martial. Six were originally referred to summary courts-martial. One of

those six accused objected to a summary court-martial. *See* Article 20, UCMJ, 10 U.S.C. § 820. His case was referred to a special court-martial, but the convening authority then accepted the accused's request for administrative discharge in lieu of court-martial. All six were administratively discharged. The appellant's case was referred directly to a special court-martial. An officer turned down nonjudicial punishment (NJP) under Article 15, UCMJ. His case was referred to a general court-martial, but the trial is still pending.

The appellant received the first five of the six-inoculation anthrax regimen. By his own account, he was on his second enlistment, and this was his fifth deployment to Southwest Asia. It appears he is the only Air Force member deployed to a hostile fire zone to be disciplined for refusing the anthrax inoculation since 1998. In addition to the nonjudicial punishment he received for his first refusal in December, the appellant received a letter of counseling for reporting late for duty. He also received a letter of reprimand for reporting late for duty on a different occasion and engaging in insubordinate conduct toward a noncommissioned officer. The performance report that closed out before his deployment noted a "downward turn" in his attitude and self-initiative after his request for early separation was denied. The prosecution also presented substantial evidence that the appellant was motivated to refuse the inoculation, not because of his concern for the effects of the vaccine upon his body, but because he wanted to return to Barksdale Air Force Base to operate a trucking business he had been running during his off-duty hours before he deployed.

▮▮▮▮ By affirming a sentence, we do not necessarily mean that it is the sentence we would have adjudged had we been the sentencing authority. The numerous permutations and combinations of sentencing alternatives available to the sentencing authority are so broad that, normally, there will not be only one sentence that is appropriate for a particular appellant. So, we view the approved sentence as a whole to determine whether it is inappropriate for this appellant based on his character, military performance,

the circumstances surrounding his offenses, and all matters documented in the record of trial. *United States v. Joyner,* 39 M.J. 965, 966 (A.F.C.M.R.1994). In this case, after considering all the facts and circumstances surrounding the commission of the offense, as well as the character of the appellant and the matters in the record of trial, we are convinced the approved sentence is appropriate.

## V. Post–Trial Processing Error

During the sentencing phase of the trial, the prosecution offered a personal data sheet that incorrectly reflected the appellant had received NJP on two separate occasions. Upon inquiry by a court member, the military judge instructed the members that it was a typographical error—the appellant only received one NJP. The personal data sheet that was attached to the staff judge advocate's recommendation (SJAR) was not corrected. However, the SJAR accurately reflected that the appellant had been convicted of willfully disobeying the order of a superior commissioned officer (his commander) to receive the anthrax vaccination, that the appellant had been previously punished under Article 15, UCMJ, for refusing to get the anthrax vaccination, and that he had been reprimanded for unrelated misconduct. Neither the appellant nor his defense counsel noted the error in their responses to the SJAR.

▮▮▮▮ By failing to object to matter in the SJAR before it is sent to the convening authority, the appellant "waives" any later claim of error, absent plain error. R.C.M. 1106(f)(6). *See United States v. Kho,* 54 M.J. 63, 65 (2000). Because of the highly discretionary nature of the convening authority's action on the sentence, we must grant relief if the appellant presents "some colorable showing of possible prejudice." *Id.* (quoting *United States v. Wheelus,* 49 M.J. 283, 289 (1998)). If the appellant makes such a showing, we must either provide meaningful relief or return the case for a new SJAR and action. *Wheelus,* 49 M.J. at 283. The appel-

lant failed to present any colorable showing of prejudice, and we have found none.

## VI. Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are AFFIRMED.