UNITED STATES

v.

Airman First Class Kerry J. NAZARIO, United States Air Force.

ACM 34221.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 May 2000.

Decided 19 Oct. 2001.

Appellate Counsel for Appellant: Captain Patrick J. Dolan (argued), Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Major Stephen P. Kelly.

Appellate Counsel for the United States: Captain Matthew W. Mulbarger (argued), Colonel Anthony P. Dattilo, Major Lance B. Sigmon, Major Linette Romer, and Major Eric D. Placke.

Before YOUNG, Chief Judge, BRESLIN, and HATTRUP, Appellate Military Judges.

OPINION OF THE COURT

YOUNG, Chief Judge:

Court members convicted the appellant of fraudulent enlistment, unlawful entry, and rape. Articles 83, 134, 120, UCMJ, 10 U.S.C. §§ 883, 934, 920. The approved sentence consists of a dishonorable discharge, confinement for 20 months, forfeiture of all pay and allowances, and reduction to E–1. We affirm.

### I. Legal and Factual Sufficiency

The appellant alleges his convictions for rape and unlawful entry are legally and factually insufficient. Our statutory duties to review a case for legal and factual sufficiency are spelled out in Article 66(c), UCMJ, 10 U.S.C. § 866(c), as follows:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and hear the witnesses.

During the congressional hearings on the UCMJ, it was clear that Boards of Review, now Courts of Criminal Appeals, were required to review both the law and the facts. However, there was considerable debate over the scope of authority of the Boards of Review. That debate focused on the power of the Boards of Review to affect the sentence approved by the convening authority. *See United States v. Sills,* ACM 34323, — M.J. —, 2001 WL 1338955 (A.F.Ct.Crim.App. 18 Oct 2001). There was little discussion, and virtually no disagreement, concerning the standards the Boards should use in reviewing findings. *Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. on Armed Services,* 81st Cong. 617 (1949) (statement of Prof. Edmund M. Morgan Jr., Harvard University Law School). The commentary explaining the draft Article 66(c), UCMJ, that was submitted to Congress provided in pertinent part as follows:

> The board of review shall affirm a finding of guilty of an offense or a lesser included offense (see art. 59) if it determines that the finding *conforms to the weight of the evidence* and that there has been no error of law which prejudices the substantial rights of the accused. (See art. 59 Commentary.)

*Hearings on H.R. 2498* at 1187 (emphasis added).

The standard of review appellate courts were expected to apply under the UCMJ to questions of legal sufficiency was clearly stated in the congressional hearings—"whether there was any evidence upon which the tryer [sic] of fact could reasonably find a defendant [guilty], as in the civilian court." *Id.* at 609. Or, "that there is no evidence to support the judgment". *Id.* at 611–12. Factual sufficiency was described as the authority of the Board to "set aside cases because it is mani-

festly against the weight of the evidence." *Id.* at 617. In reporting the UCMJ out of committee, the Armed Services committees of both houses of Congress adopted verbatim the "conforms to the weight of the evidence" language contained in the drafters' commentary. S.Rep. No. 81–486, at 28 (1949); H.R.Rep. No. 81–491, at 31–32 (1949). "Conforms to the weight of the evidence" appears to be synonymous with the preponderance of the evidence. *See United States v. Washington,* 54 M.J. 936, 940–41 (A.F.Ct.Crim.App. 2001).

After the UCMJ was passed into law, the legislative history disappeared into the dustbin of history. Without mentioning the legislative history, Boards of Review adopted a beyond a reasonable doubt standard in their review of factual sufficiency. *See, e.g., United States v. Deveaux,* 3 C.M.R. 823, 826, 1952 WL 2045 (A.F.B.R.1952) ("In order, however, for the Board of Review to affirm the approved findings of guilty, it must, after the exercise of its power and duty to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact (recognizing that the trial court saw and heard the witnesses), be convinced beyond a reasonable doubt of the guilt of the accused."); *United States v. Cantu,* 2 C.M.R. 220, 222, 1951 WL 2228 (A.B.R.1951) ("While it is primarily the duty of the court to weigh the evidence, the board too, must be convinced that the weight of the evidence is sufficient to preclude any reasonable doubt as to the guilt of the accused."). As a basis for these decisions, the Boards cited to portions of the *Manual for Courts–Martial, United States, 1951,* that were meant to apply to the trial court and cases decided by Boards of Review and the Judicial Council under the law as it existed prior to the UCMJ. *See, e.g., United States v. Cox,* 3 C.M.R. (AF) 270, 286 (A.F.B.R.1950) ("[T]he Board retains a substantial doubt generated by insufficiency of proof, as to the guilt of the accused of these alleged offenses. The proof relating to the offenses is not 'such as to exclude every hypothesis or probability of innocence but only any fair and rational hypothesis except that of guilt.'" (Citations omitted)).

In the very first case it decided, the Court of Military Appeals "set forth a few well-known principles of law which govern the scope" of its review. *United States v. McCrary,* 1 C.M.R. 1, 2, 1951 WL 1497 (C.M.A.1951). In doing so, it also hinted at the scope of review for the Boards of Review.

> The third principle of law is in substance that the evidence must establish beyond a reasonable doubt that the defendant is guilty of the crime charged. This rule likewise has almost universal application, but it must be borne in mind that the test is applied by jurors or the triers of the facts and not by a review or appellate court.

*Id.* at 3. However, the Court may have confused the issue when it went on to discuss "the rule which states that the evidence must exclude every reasonable hypothesis of innocence. This, too, is a rule for the guidance of the trial forums. Undoubtedly, the courts-martial and boards of review should take cognizance of this principle...." *Id.* at 4.

In *United States v. Hendon,* 22 C.M.R. 219, 1956 WL 4758 (C.M.A.1956), the Navy Board of Review reduced a conviction for desertion to absence without leave because of the insufficiency of the evidence. The Judge Advocate General of the Navy certified the issue to the Court of Military Appeals (CMA). The accused argued that the Board of Review had exercised its fact-finding power which was not reviewable by the CMA. The CMA held that the Board's decision was one of legal sufficiency which the CMA was authorized to review, because "[the Board's] members did not assert that they personally were not convinced beyond a reasonable doubt that the accused intended to remain away permanently." *Id.* at 223.

In 1957, the Supreme Court of the United States had occasion to review the meaning of Article 66(c), UCMJ, with regard to the authority of the Boards of Review to reassess a sentence after setting aside a verdict of a court-martial on some, but not all of the charges. The Court cited the reports of the Senate and House on Article 66(c) as clearly manifesting the intent of Congress with regard to the authority of the Boards of Review. *Jackson v. Taylor,* 353 U.S. 569, 577,

77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957). "The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense ... if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused." *Id.* at n. 8. Although the standard of review for factual sufficiency was not a topic that garnered much comment in the opinions of the Boards of Review, they appear to have continued to apply the beyond a reasonable doubt standard. *See, e.g., United States v. Higdon,* 2 M.J. 445, 448 (A.C.M.R.1975); *United States v. Young,* 35 C.M.R. 852, 858, 1965 WL 4754 (A.F.B.R. 1965).

Thirty years after *Jackson v. Taylor,* an appellant asked the CMA to determine whether the Navy–Marine Court of Military Review had performed an appropriate factually sufficiency review of his case. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). In deciding the issue, the CMA established the standards of review for both legal and factual sufficiency. The old legal sufficiency standard—some evidence to support the conviction—was replaced with the standard established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)—"whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner,* 25 M.J. at 324–25. Without reference to the legislative history of Article 66(c) and without citation to any other authority, the CMA adopted the same factual sufficiency test used by the Boards of Review and suggested by the CMA in *Hendon*—"whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325. *Accord United States v. McAllister,* 55 M.J. 270, 277 (2001).

We have examined the language of Article 66(c), the legislative history of that provision, as well as the applicable Supreme Court case law. We can find nothing that supports the reading given to the statute by the Boards of Review, or the CMA in *Hendon, Turner,* and their progeny.

We are mindful that, "[i]n the absence of a superceding statute or an intervening decision of [the United States Court of Appeals for the Armed Forces (CAAF)] or the Supreme Court of the United States," we are bound by the CAAF's previous decisions. *United States v. Allbery,* 44 M.J. 226, 228 (1996). And, we admit that there is no "intervening decision" between *Turner* and this case. However, although the Supreme Court's decision in *Jackson v. Taylor* focused on the Board of Review's sentencing authority rather than its findings responsibilities, it clearly indicated that the test for factual sufficiency is whether the conviction conforms to the weight of the evidence.

Normally, when we have concerns about the correctness of a decision by the CAAF, we would express that viewpoint, follow the CAAF's precedent, and urge the CAAF to reconsider. The losing party could then appeal our decision to the CAAF for resolution. It is not that easy when the issue is factual sufficiency. The CAAF is without authority to review the factual sufficiency of the evidence. *See* Article 67, UCMJ, 10 U.S.C. § 867; S.Rep. No. 81–486 at 32 ("If the [Court of Criminal Appeals] has set aside a finding as against the weight of the evidence this decision cannot be reconsidered by the [CAAF]."). The CAAF is limited to determining whether the Court of Criminal Appeals applied the correct legal standard in its factual sufficiency review of the case. Thus, as long as we apply the beyond a reasonable doubt standard mandated in *Turner,* there would be no case or controversy—no actual dispute—until we reversed a conviction because the evidence did not support it beyond a reasonable doubt. In the interim, the Courts of Criminal Appeals would be forced to employ a standard that appears to be contrary to the intent of Congress.

Therefore, to ripen this issue, we will apply a preponderance of the evidence standard in reviewing the factual sufficiency of the appellant's convictions. By doing so, we do not mean to suggest that the evidence would not

convince us beyond a reasonable doubt, only that we have not examined the evidence under that more rigorous standard.

*A. Unlawful Entry and Rape*

■ The appellant asserts that his convictions for unlawful entry and rape are legally and factually insufficient. He claims that he would have been justified in concluding that NG, the alleged victim, consented to having sexual intercourse with him, and that her testimony to the contrary was unreliable.

The appellant and NG were acquaintances; they had attended technical school at Sheppard Air Force Base (AFB) together, had been part of the same 5–member element in survival school at Fairchild AFB, and lived in the same complex of dormitory buildings at Altus AFB. At the time of the incident, they were attending loadmaster training, but were in separate classes—he for C–5s and she for C–141s. NG asserted that she never dated the appellant, they were not close friends, and she did not confide personal information to him. However, she admitted that the appellant was in her dormitory building looking for Airman (Amn) Heather Hadley when NG received a phone call about her brother being in an automobile accident that left him in a coma.

The appellant and a friend threw a barbecue on a Friday night. NG and several others participated. NG claimed she had three beers and a "sip" of whiskey at the barbecue. NG and some of her female friends left the barbecue and started walking to the enlisted club. The appellant was not part of the group. On the way to the club, NG started acting "goofy." By the time she got to the club, she could not hold her head up and kept slipping out of her chair. Amn Hadley escorted her to the restroom where she vomited profusely. Amn Hadley decided NG needed to go back to her room. She asked another female, Amn Wyman, to help her take NG back. The appellant convinced Amn Wyman to let him assist Amn Hadley. The appellant and Amn Hadley helped NG back to her room. They stayed with NG until she fell asleep. Before leaving, the appellant suggested that Amn Hadley change NG out of her jeans and into shorts so she would be more comfortable. Amn Hadley did so. During the walk back to the club, the appellant told Amn Hadley that he felt uncomfortable about leaving NG alone and wanted to return to check on her. Not wanting to let the appellant be alone with the passed-out NG, Amn Hadley accompanied the appellant to NG's room. They found NG sleeping and then returned to the club.

Sometime later, the appellant returned to NG's room. NG woke up when she heard the telephone in the hall ring. The appellant answered it. It was NG's boyfriend, Amn Tugan, calling from another base. When the appellant answered the phone, Amn Tugan hung up, thinking he had reached a wrong number. He redialed and the appellant answered again and identified himself. The appellant said NG was "fucked up," but that Amn Tugan could talk to her. Amn Tugan testified that NG got on the phone, but sounded very drunk and "out of it," although she had coherent moments. After the phone call, NG returned to bed. The next thing she remembered was the appellant trying to get her to go to his room. She declined and went back to sleep. The next time she awoke, the appellant was naked, with his legs over her head, performing oral sex on her. NG passed out again and woke up with the appellant on top of her engaged in sexual intercourse. She told him no and yelled out. He put his hand over her mouth. NG either pushed him off or he voluntarily got off her and ejaculated on the bed. The appellant grabbed his clothes as NG chased him out of the room. NG closed and locked the door and took a shower. After the shower, she went to her friends and told them what happened. They noticed she was visibly distraught.

The appellant's version of the events is somewhat different. He testified that when he and Amn Hadley put NG to bed, NG said that she wanted him to stay. He claims that the second time he returned to NG's room she invited him in and let him sit on the bed by her side. He claims they talked for a while, she couldn't believe his ex-girlfriend no longer wanted him, and she said that "any girl who didn't want to be with [him] was crazy." He asked her if she wanted to make love to him, and she said yes. They then

began kissing and fondling each other. The appellant testified that after the phone conversation, she returned to the bed and started undressing him. This led to him kissing her in the vaginal area and then asking her to go to his room—where he kept his condoms. He claims NG did not want to go to his room. After more kissing, they engaged in sexual intercourse. When he pulled out to avoid getting her pregnant, NG said, "You know I have a boyfriend, and I want to marry him, and if I get pregnant I'm going to kill you, me, and the baby."

A sexual assault nurse examiner, testifying as an expert without objection, examined photographs of NG's vagina taken by medical personnel shortly after the incident. She testified that the number and extent of NG's injuries were statistically consistent with forcible non-consensual penetration. A military gynecologist testified that, while the photographs revealed some injury to the vagina, there was "no way, by looking at those pictures, that someone could definitively say that that was nonconsensual."

The appellant's counsel did a superb job in reviewing the evidence, referencing facts that appeared to contradict the complainant's version of the incident, and providing an alternate explanation for what occurred. He alleged that, under the circumstances, the amount NG drank would not cause the level of impairment she claimed; NG had motive to lie and did, in fact, lie to investigators about whether she had ever had intercourse before; that NG had retained Amn Hadley's father to represent her in a possible civil suit against the Air Force; and, that the episode could have been a misunderstanding.

The elements of the offense of rape are as follows:

> (1) That the accused committed an act of sexual intercourse; and
>
> (2) That the act of sexual intercourse was done by force and without consent.

*Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45b(1) (1998 ed.).

The elements of the offense of unlawful entry are as follows:

> (1) That the accused entered the real property of another or certain personal property of another which amounts to a structure usually used for habitation or storage;
>
> (2) That such entry was unlawful; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, ¶ 111b.

We have examined the evidence in the light most favorable to the prosecution and conclude that reasonable court members could have found the appellant guilty of all elements of the offenses of unlawful entry and rape, beyond a reasonable doubt. *Turner,* 25 M.J. at 324. Furthermore, we are convinced the findings on each specification conform to the weight of the evidence. *Jackson,* 353 U.S. at 577 n. 8, 77 S.Ct. 1027 (quoting S.Rep. No. 81–486, at 28); *Washington,* 54 M.J. at 940–41.

### B. *Fraudulent Enlistment*

In the fall of 1998, the appellant contacted an Air Force recruiter about enlisting. He told the recruiter that, in 1991, when he was 15 years old, he had been arrested in Binghamton, New York, and charged with harassment or fighting. The appellant admitted paying a $50 fine and that the record had been sealed because he was a youthful offender. Based on the appellant's statement, and with his permission, the recruiter contacted the City of Binghamton to verify the information. The recruiter testified that he either did not receive any reply from the City of Binghamton or the court informed him the record was sealed. On other forms the appellant completed in the enlistment process, he claimed he had never been convicted of a felony and had never been placed on probation. In fact, on 22 April 1993, the appellant was adjudicated as a youthful offender for assault in the second degree, a Class D Felony. He was sentenced to restitution and 5 years' probation.

A person commits the offense of fraudulent enlistment if he "procures his own enlistment or appointment in the armed forces by knowingly false representation or deliberate concealment as to his qualifications for

the enlistment or appoint and receives pay or allowances thereunder." Article 83(1), UCMJ. The elements of the offense are as follows:

(1) That the accused was enlisted or appointed in an armed force;

(2) That the accused knowingly misrepresented or deliberately concealed a certain material fact or facts regarding qualifications of the accused for enlistment or appointment;

(3) That the accused's enlistment or appointment was obtained or procured by that knowingly false representation or deliberate concealment; and

(4) That under this enlistment or appointment that accused received pay or allowances or both.

*MCM,* Part IV, ¶ 7b(1).

The appellant asserts that his conviction for fraudulent enlistment is legally and factually insufficient because the evidence failed to establish that he knowingly misrepresented his criminal history and his conviction was not an absolute bar to his enlistment.

Under the appellant's theory, an accused cannot be lawfully convicted of fraudulent enlistment unless the misrepresentation, if known, would absolutely prohibit the government from enlisting him. The appellant insists that because the Air Force had the authority to waive his disqualifications (having been convicted of a felony and being placed on probation), he cannot be convicted of fraudulent enlistment. In support of this proposition, he cites three cases: *United States v. Danley,* 45 C.M.R. 260, 1972 WL 14170 (C.M.A.1972), *United States v. Stevens,* 7 C.M.R. 838, 1953 WL 1610 (A.F.B.R.1953); and *United States v. Loyd,* 7 C.M.R. 453, 1953 WL 1580 (N.B.R.1953). The appellant has misconstrued the decisions in those cases.

In *Stevens,* the accused testified that he was incapable of intentionally falsifying or concealing pertinent facts regarding his enlistment because his drug and alcohol use robbed him of the mental capacity to do so. The board of review stated that a violation of Article 83 required, as an essential element, a "knowingly false representation or intentional concealment of a fact which, if known, would prevent his enlistment." *Stevens,* 7 C.M.R. at 841. However, the board based its decision to reverse on the prejudicial failure of the law officer to instruct the court members that the accused could not be convicted if he did not have the mental capacity to know that his representations were false or he did not intend the concealment of a material fact. *Id.* at 842.

In *Loyd,* the accused claimed that he told the Navy recruiter that he had previously been enlisted in the Army and that the recruiter told him to deny in the enlistment applications having so served. In a stipulation of expected testimony, the recruiter said that he could not remember the accused. The Navy Board of Review reversed. There apparently was no evidence to contradict the accused's testimony that he did not conceal the information from the recruiter.

Danley enlisted in the Army in 1967 for a term of three years. A year later, he re-enlisted for another term of three years and was paid a re-enlistment bonus, payable only to those re-enlisting for the first time. In 1969, Danley re-enlisted for four years, but concealed his previous enlistment so that he could again receive the re-enlistment bonus for first time re-enlistees. The Army Court of Military Review decided that whether Danley's re-enlistment was fraudulent "depends on whether the concealed fact would have operated as a bar to his entry upon a new term of service." *Danley,* 45 C.M.R. at 261. The Court did not define the term "bar," or analyze the degree of the material misrepresentation necessary to constitute the offense of fraudulent enlistment. The Court then held that Army regulations permitted Danley to re-enlist, they just did not authorize payment of an additional re-enlistment bonus. While reversing his conviction for fraudulent enlistment, the Court sustained his conviction of larceny of the second re-enlistment bonus.

It is an offense for an accused to procure his own enlistment by a knowingly false misrepresentation. Article 83(1), UCMJ. Although the appellant did tell the recruiter about the incident, there is no doubt that he denied ever being convicted of

a felony and of being placed on probation. We reject the appellant's contention that the false representation must have concerned a matter that would absolutely bar him from the service. To accept the appellant's view would be contrary to the plain language of the statute. An accused violates Article 83 by providing false information about a matter that would preclude him from entry without the service waiving the disqualification.

The evidence was sufficient in this case for court-members to conclude beyond a reasonable doubt that the appellant knowingly misrepresented the felony nature of the offense of which he had been convicted and the sentence imposed by the court. Furthermore, we are convinced the court's finding conforms to the weight of the evidence. *Washington,* 54 M.J. at 940.

## II. The Motion to Sever

The appellant argues that the military judge abused his discretion by refusing to sever the fraudulent enlistment charge from the rape and unlawful entry charge. He contends that the evidence was factually and legally insufficient to support his convictions for rape and unlawful entry. He believes that trying him for all the offenses at the same trial resulted in manifest injustice by leading the members to believe he was a bad person and that they should convict him on that basis. He claims the trial counsel mingled the offenses in his closing argument and the military judge's instruction were not sufficient to compel the court members to decide his guilt on each offense separately. He insists that the military judge should have instructed the members not to consider evidence of the juvenile assault on the issue of rape, and not to consider the evidence that the appellant fraudulently enlisted in weighing his in-court testimony.

The convening authority has the discretion to refer two or more offenses charged against an accused to the same court-martial, regardless of whether the charges are related. Rule for Courts–Martial (R.C.M.) 601(e)(2). The non-binding Discussion to R.C.M. 601(e)(2) provides as follows: "Ordinarily all known charges should be referred to a single court-martial." The military judge may grant a motion to sever charges to prevent manifest injustice. R.C.M. 906(b)(10).

We review the military judge's refusal to grant the motion to sever for an abuse of discretion. *United States v. Foster,* 40 M.J. 140, 148 (C.M.A.1994). We must consider three factors in determining whether the military judge abused his discretion: (1) whether evidence of one offense would be admissible proof of another offense; (2) whether the military judge provided a proper limiting instruction; and (3) whether the findings reflect an impermissible crossover—in other words, did the court members improperly use evidence of one offense to find him guilty of another? *United States v. Southworth,* 50 M.J. 74, 76 (1999); *United States v. Curtis,* 44 M.J. 106, 128 (1996), *rev'd as to sentence on recon.,* 46 M.J. 129 (1997).

(1) Evidence of the fraudulent enlistment would not be admissible proof of the unlawful entry and rape. However, if the charges had been severed and the appellant took the stand on the unlawful entry and rape allegations, as he did here, the trial counsel would have been permitted to cross-examine him about his felony conviction, his sentence to probation, and his failure to admit such on his enlistment documents. Mil. R. Evid. 608(b)(1). The prosecution could also ask any witnesses testifying to the appellant's character—such as for truthfulness or general good military character—whether they knew or were aware that the appellant had been convicted, been put on probation, and subsequently lied about it to effect his enlistment in the Air Force. Mil. R. Evid. 405(b)(1).

(2) The military judge gave the appellant an opportunity to craft the spillover instruction, but he declined. The military judge gave the standard spillover instruction that specifically told the members they could not use evidence of one offense to convict the appellant of another. The appellant did not object. The military judge gave the instruction again after the trial counsel's closing argument.

(3) The findings do not reflect that the members used strong evidence of one offense to convict him on weak evidence of another offense. While the trial defense team put up a good fight in trying to raise reasonable doubt in the minds of the court members, the evidence for conviction of each of the offenses was strong.

The appellant contends that the trial counsel crossed the line in his closing argument and "merged" the evidence of one offense with the other. We disagree. The trial counsel merely opened and closed his argument with a statement that the accused was guilty of the three offenses. He never tried to impeach the appellant with evidence that he had fraudulently enlisted and never argued it as a reason to disbelieve the appellant.

### III. Instruction on the Appellant's Limited Testimony

The defense told the military judge that the appellant would testify as to the rape and unlawful entry charges, but not about the fraudulent enlistment charge. He asked the military judge to preclude the trial counsel from asking the appellant any questions about the fraudulent enlistment charge. Prior to the appellant testifying, the military judge gave a prosecution-requested instruction, over the appellant's objection, as follows:

> Okay, before you begin your examination, counsel, let me just tell the members the defense has informed me that Airman Nazario will testify concerning the rape and unlawful entry charges, which are the charges under Articles 120 and 134. You are advised that the accused has an absolute right to remain silent as to any charges that he desires and you will not draw any inference adverse to the accused from the fact that he will not testify concerning the fraudulent enlistment charge. The fact that he chooses not to testify on that charge must be disregarded by you. You are further advised that neither the trial counsel nor the court, nor the court members, may question the accused about any matter that he does not testify about. Does any court member have any questions on that?

The appellant claims that the military judge erred by giving such an instruction. He asserts that he had a right to testify concerning two of the offenses and not to the other. Mil. R. Evid. 301(e). He insists that, under Mil. R. Evid. 301(g), the military judge is bound by an accused's decision on such an instruction unless the judge finds such an instruction is necessary in the interest of justice *to the accused.*

Mil. R. Evid. 301(e) provides:

> When an accused testifies voluntarily as a witness, the accused thereby waives the privilege against self-incrimination with respect to the matters concerning which he or she so testifies. If the accused is on trial for two or more offenses and on direct examination testifies concerning the issue of guilt or innocence as to only one or some of the offenses, the accused may not be cross-examined as to guilt or innocence with respect to the other offenses unless the cross-examination is relevant to an offense concerning which the accused has testified. The waiver is subject to Mil. R. Evid. 608(b).

Mil. R. Evid. 301(g) provides:

> When the accused does not testify at trial, defense counsel may require that the members of the court be instructed to disregard that fact and not to draw any adverse inference from it. Defense counsel may request that the members not be so instructed. Defense counsel's election shall be binding upon the military judge except that the military judge may give the instruction when the instruction is necessary in the interests of justice.

Mil. R. Evid. 301(g) "is designed to address the potential for prejudice that may occur when an accused exercises his right to remain silent." Drafter's Analysis, *Manual for Courts–Martial, United States,* A22–7 (2000 ed.).

We hold that the military judge did not abuse his discretion in giving the instruction. First, we doubt the applicability of Mil. R. Evid. 301(g) to this case. In interpreting a statute or rule, we first look at its plain language. Mil. R. Evid. 301(g) applies only to cases in which "the accused does not testi-

fy at trial." In this case, the appellant did testify. We reject any argument that the drafters of Mil. R. Evid. 301 may have overlooked situations in which an accused testified about some but not all of the offenses. It is clear from Mil. R. Evid. 301(e), the drafters were well aware that an accused could limit his testimony to some, but not all, of the offenses. Had they meant for Mil. R. Evid. 301(g) to apply to the appellant's situation, they would have said so.

Even if Mil. R. Evid. 301(g) does apply to the appellant's case, the military judge did not abuse his discretion in giving the instruction. To do otherwise would leave the court members with the impression that they could ask questions of the appellant regarding the fraudulent enlistment charge and that the trial counsel was conceding that part of his case. Under the circumstances, the instruction the military judge gave was in the interests of justice, even if vehemently opposed by the appellant.

Finally, we find no possibility of prejudice here. The instruction correctly stated the applicable law. In the absence of credible evidence to the contrary, we presume that court members understood and followed the military judge's instructions. *United States v. Holt,* 33 M.J. 400, 408 (C.M.A.1991).

### IV. The Defense Request for a Consultant

At trial, the defense moved the court to compel the government to produce Dr. Leon Morris as a defense expert consultant to fully evaluate a government expert witness and the psychological makeup of the complainant. The prosecutors assured the military judge that they would not be producing any expert or even quasi-expert testimony. These assurances seemed to convince the defense that an expert was no longer required. Furthermore, nothing that occurred during the trial was inconsistent with these understandings nor caused the defense to raise the issue again. By accepting the prosecution's assurances, we believe the defense waived the issue. Regardless, under the circumstances, the defense failed to establish the necessity for an expert consultant. *See United States v. Gunkle,* 55 M.J. 26, 32 (2001). The military judge did not abuse his discretion in denying the request. *See United States v. Ford,* 51 M.J. 445 (1999).

### V. Request for a New Article 32 Investigation

At trial, the appellant requested a new Article 32 investigation, claiming the investigating officer (IO) impermissibly considered hearsay statements, failed to address the failure of the prosecution to prove the misrepresentation would have barred the appellant's enlistment, improperly assumed the appellant's guilt because he requested the fraudulent enlistment charge be resolved in an Article 15, UCMJ, proceeding, and was biased against the defense. While the IO made several incorrect statements of law in his report, the staff judge advocate provided correct legal advice to the convening authority. The military judge did not abuse his discretion in denying the request for a new Article 32 investigation. *See United States v. Youngman,* 48 M.J. 123, 128 (1998).

### VI. Cumulative Error

The appellant asserts that, even if none of the errors discussed above standing alone warrant reversing his convictions, he is entitled to relief under the cumulative error doctrine. *See United States v. Dollente,* 45 M.J. 234, 242 (1996). This doctrine is based on the premise that errors exist. We found no errors; so, the cumulative error doctrine is inapplicable.

### VII. Decision

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.