# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**DB, by and through Captain RANDY L. JOHNSON,
Special Victim Counsel
v.
Colonel JEFFERY D. LIPPERT, Military Judge, Respondent**

**Sergeant OTIS R. DUCKSWORTH, Real Party in Interest**

ARMY MISC 20150769

Headquarters, United States Army Alaska
Jeffery D. Lippert, Military Judge

For Petitioner:  Captain Randy L. Johnson (on brief); Captain Randy L. Johnson (on reply brief).

For Real Party in Interest:  Lieutenant Colonel Jonathan F. Potter, JA; Major Andres Vazquez, Jr., JA (on brief).

Amicus Curiae:

For the Air Force Special Victims' Counsel Program:  Lisa R. Kreeger-Norman, Esq.

For Protect Our Defenders: Peter Coote, Esq.


1 February 2016

-----------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON
PETITION FOR EXTRAORDINARY RELIEF IN THE
NATURE OF A WRIT OF MANDAMUS
-----------------------------------------------------------------

WOLFE, Judge,

Petitioner DB has requested that this court issue a writ of mandamus setting aside the military judge's ruling on Military Rule of Evidence [hereinafter Mil. R. Evid.] 513 and that we declare the mental health records that were the subject of that ruling to be inadmissible at trial. Additionally, petitioner asked this court to stay the court-martial proceedings pending such a decision.  We granted petitioner's request

for a stay on 30 November 2015.[1]  We now address the substance of the petition and lift the stay.

Petitioner assigns four errors.[2]  As we agree with the first, second, and fourth assignments of error, we do not reach the third.  The petition is GRANTED in part in that we set aside the military judge's ruling under Mil. R. Evid. 513.  The petition is DENIED in that we make no determination on whether petitioner's mental health records would be admissible at trial, assuming a properly conducted hearing under Mil. R. Evid. 513.[3]

---

[1] In granting the stay we also specifically provided for the opportunity for the Government and Defense Appellate Divisions to file responsive briefs and to "attach any matters they believe are necessary to the resolution of this petition" in order to provide an opportunity to supplement the record.  The accused, as the real party in interest submitted a responsive brief but did not attach new matters.  The government submitted neither a brief nor additional matters.  Accordingly, we will resolve the petition based on the limited record before us.

[2] The assignments of error are as follows:

I. Whether the military judge erred as a matter of law when he ruled that the disclosure of [petitioner's] mental health records prior to an evidentiary hearing as required by Mil. R. Evid. 513(e)(2) did not violate her privilege under Mil. R. Evid. 513(a).

II. Whether the military judge erred as a matter of law in determining that a mandatory disclosure under Mil. R. Evid. 513(d)(2) was sufficient to trigger an in camera review of [petitioner's] mental health records.

III. Whether the military judge erred as a matter of law by ruling that the constitutional exception applies under Mil. R. Evid. 513.

IV. Whether the military judge abused his discretion when he ruled that the defense met its burden under Mil. R. Evid. 513 and *United States v. Klemick* [56 M.J. 576 (C.A.A.F. 2006)] where the defense offered no evidence or witnesses in support of their motion to compel production of [petitioner's] mental health records.

[3] We granted two motions to submit briefs as amicus curiae from "Protect Our Defenders" and The United States Air Force Special Victims' Counsel Division.

# I. JURISDICTION

Before we can address petitioner's questions, we must first determine whether we have jurisdiction to issue the writ requested. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (Jurisdiction must be established as a threshold matter without exception).  As the provisions of Article 6b(e), UCMJ, are relatively new, some inquiry is necessary.

The Army Court of Criminal Appeals is a court of limited jurisdiction, established by The Judge Advocate General.  UCMJ art. 66(a).  ("Each Judge Advocate General shall establish a Court of Criminal Appeals . . . .").  The mandate to establish this court was made pursuant to the authority of Congress to pass laws regulating the Armed Forces.  *See* U.S. Const. art. I, § 8, cl. 14.  Our jurisdiction has generally been limited to appeals by the United States under Article 62, UCMJ, and reviewing the findings and sentences of certain courts-martial under Article 66(b), UCMJ.  While not a separate grant of jurisdiction, this court may also issue writs under the All Writs Act.  28 U.S.C. § 1651(a) (2012).  Our ability to issue writs under the All Writs Act is limited to our "subject matter jurisdiction over the case or controversy."  *United States v. Denedo*, 556 U.S. 904, 911 (2009); *see also* UCMJ art. 66.

Accordingly, writ jurisdiction under the All Writs Act is limited to those matters that are "in aid of [our] respective jurisdiction[]" under Article 66, UCMJ.  28 U.S.C. § 1651(a).  Jurisdiction under the All Writs Act is therefore limited to matters that "have the potential to directly affect the findings and sentence."  *Ctr. For Constitutional Rights v. United States*, 72 M.J. 126, 129 (2013) (citing *Hasan v. Gross*, 71 M.J. 416 (C.A.A.F. 2012)); *see also LRM v. Kastenberg*, 72 M.J. 364, 368 (2013).

Many victim rights are procedural, and even if a court-martial disregards the rights, such action may often be unlikely to have the potential to directly affect the findings or sentence.[4]  However, in December 2014, Article 6b, UCMJ, was amended

---

[4] For example, the ability to be heard has been described as both a both a "right" and a "rite."  *See* Mary Margaret Giannini, *Equal Rights for Equal Rites?: Victim Allocution, Defendant Allocution, and the Crime Victims' Rights Act*, 26 Yale L. & Pol'y Rev. 431, 433 (2008) ("Being afforded the right to participate in the solemn rite of a trial signals to the speaker that what she has to say is valued.  She has been called to participate in one of the weightiest of our community rituals because her presence and observations are deemed an important part of the legal process. The speaker's views may not prevail, but her insights, experiences, and contributions are nonetheless acknowledged and validated by the mere fact that she was heard in an official forum.").

to provide that a victim of an offense may petition this court for a writ of mandamus to enforce certain statutory and procedural rights. UCMJ art. 6b(e); 10 U.S.C. § 806b(e) (2012 Supp. II); *see* Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 [hereinafter 2015 NDAA], Pub. L. No. 113-291, § 535, 128 Stat. 3292, 3368 (2014) (Enforcement of Crime Victims' Rights Related to Protections Afforded by Certain Military Rules of Evidence). We understand the mandate of Article 6b(e)(3), UCMJ (as recently amended), for such petitions to be forwarded "directly" to this court and "to the extent practicable," for this court to give such petitions "priority over all other proceedings" to be a new and separate statutory authority for this court to issue writs. National Defense Authorization Act for Fiscal Year 2016, Pub. L. 114-92, § 531(e)(3) (2015) (Enforcement of Certain Crime Victim Rights by the Court of Criminal Appeals). That is, Article 6b, UCMJ, is a distinct authority from the All Writs Act.

To consider a petition for a writ under Article 6b, UCMJ, we need not find that the matter is in aid of our jurisdiction under Article 66. Or, more precisely, we need not find that the matter(s) raised in the petition has "the potential to directly affect the findings and sentence." *LRM,* 72 M.J. at 368. Instead, to find jurisdiction to issue a writ under Article 6b we need only determine that the petition addresses the limited circumstances specifically enumerated under Article 6b(e).[5] As this petition alleges that the military judge failed to follow Mil. R. Evid. 513, a matter specifically enumerated in Article 6b(e)(4)(D), we find that we have jurisdiction to consider the merits of the petition.

---

[5] Were writ jurisdiction under Article 6b, UCMJ, limited to matters that had the potential to directly affect the findings and sentence, we would lack jurisdiction over a writ petition in cases where Congress specifically authorized a victim to file a petition. Consider, for example, a writ petition that alleges that the victim petitioner was improperly excluded from attending the trial. Under Article 6b(a)(3), a victim may only be excluded if the military judge finds by clear and convincing evidence that the victim's presence would materially alter the victim's testimony. Accordingly, a writ petition alleging the *improper* exclusion of a victim is permissible only when a victim was excluded and the victim's presence *would not* materially alter testimony. In other words, Article 6b authorizes a writ petition only in circumstances where the exclusion of the victim is *unlikely* to affect the findings and sentence. It would be difficult to imagine that Congress intended to authorize the filing of a writ to this court but not authorize this court to have jurisdiction to consider the matter.

4

## II. STANDARD

To obtain the requested writ of mandamus, petitioner must show that: (1) there is "no other adequate means to attain relief;" (2) the "right to issuance of the writ is clear and indisputable;" and (3) the issuance of the writ is "appropriate under the circumstances." *Cheney v. United States Dist. Court for D.C.,* 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted).

## III. CHRONOLOGY

On 23 June 2015, the government preferred charges against the accused (the real party interest) for allegedly committing sexual offenses against the petitioner and one other victim in 2012 and 2013. On 15 September 2015, the military judge ordered the government to "produce in complete and unredacted form, sealed for *in camera* review by a military trial judge, all [of petitioner's records] currently maintained by the Alaska Office of Child Services." The authority cited by the military judge was Article 46, UCMJ ("Opportunity to obtain witnesses and other evidence").[6]

The next day, on 16 September 2015, the trial counsel issued a subpoena for petitioner's records from two civilian mental healthcare providers. The subpoena stated that the production was for the purpose of "judicial in-camera review." The subpoena stated that failure to comply could result in apprehension or fines of up to $500.

Also on 16 September 2015, the defense counsel filed a motion to compel the production of those same mental health records under Mil. R. Evid. 513.[7] (That is, the military judge's order predated the defense motion, and the defense motion was contemporaneous with the trial counsel's subpoenas).

---

[6] Email traffic between the parties suggests that the military judge's order was in response to a request from the trial counsel who was seeking to avoid a continuance.

[7] Unless otherwise noted, references or citations to the Military Rules of Evidence in this opinion will be to those rules found in the Supplement to the 2012 edition of the *Manual for Courts-Martial* ("a complete revision to the Military Rules of Evidence . . . implementing the 2013 Amendments to the MCM" enacted by Executive Order 13643), as modified by subsequent legislation and executive action (e.g., Exec. Order 13696). Any exceptions will be annotated. *See also* "Updated Military Rules of Evidence" posted by the Joint Service Committee on Military Justice in June 2015. *Part III Military Rules of Evidence*, http://jsc.defense.gov/Portals/99/ Documents/MREsRemoved412e.pdf (last visited 29 Jan. 2016, 1145).

On 29 September 2015, the military judge held a closed Article 39(a) session to address the defense's motion to compel the production of the mental health records. The military judge noted his error in prematurely ordering the production of mental health records before the hearing had ever occurred, and stated that while the records had been produced, he had not yet reviewed the records.

At the hearing, neither side presented any evidence nor called any witnesses.

The military judge issued a verbal ruling on the record granting the defense's motion for an *in camera* review of all the mental health records. The hearing recessed at 1443 hours.

That same day, the Special Victim Counsel (SVC) requested that the military judge delay disclosure of any mental health records pending the filing of this writ petition. The military judge denied the request.

Just over ten hours after the hearing ended, at 0101 hours on 30 September 2015, the military judge emailed the parties and informed them that he had completed the *in camera* review and that he was ordering "numerous" pages disclosed.[8] The email included what could be interpreted as a two-sentence protective order, stating that the disclosed records are "FOUO" and that copies of the records will be returned to the trial counsel at the conclusion of trial.

On 27 October 2015, the SVC requested that the military judge reconsider his ruling.

On 6 November 2015, the military judge reconsidered but reaffirmed his prior ruling.

## IV. DISCUSSION

The problems that this case presents are manifold, and we will address each in turn.

### A. *Ordering the Production of Mental Health Records*.

As noted above, the military judge and trial counsel ordered the production of petitioner's mental health records for the purpose of conducting an *in camera* review prior to having a hearing under Mil. R. Evid. 513, and (at least in the case of the military judge) prior to the defense filing a motion for the production of the records. This act was in clear violation of the rules. Mil. R. Evid. 501(b)(3) ("A claim of privilege includes . . . refus[al] to produce any object or writing"); Mil. R. Evid.

---

[8] Petitioner avers that the disclosed records numbered over 1400 pages.

513(a) ("A patient has a privilege to refuse to disclose and prevent any other person from disclosing . . . ."); Mil. R. Evid. 513(e)(1)(A) (in order to obtain a ruling by the military judge, a party "must" file a written motion); Mil. R. Evid. 513(e)(2) ("Before ordering the production . . . the military judge must conduct a hearing.").

The military judge admitted this error during the subsequent motion hearing and explained that the production of the records had been at the request of the trial counsel. He further explained that he thought the SVC was included on the email and that the SVC had not objected. This explanation falls short in several respects.

First, the failure to object cannot be construed as either an affirmative waiver of a privilege or waiver of the procedural requirements under Mil. R. Evid. 513. *See, e.g.,* Mil. R. Evid. 510 (Waiver of privilege by voluntary disclosure). Even if the SVC had been included in the email chain, which he apparently was not, his silence cannot be deemed a waiver of procedural requirements.

Second, in *CC v. Lippert*, ARMY MISC 20140779 (Army Ct. Crim. App. 16 Oct. 2014) (order), this court, in response to a similar petition for a writ of mandamus, instructed this military judge that he "will comply with Military Rule of Evidence 513(e)(2) prior to deciding whether to order production of Petitioner's mental health records for in camera review." That is, less than a year prior to the military judge's actions in this case, we were required to direct that this same judge follow this same rule.

Finally, ordering the production of privileged mental health records "for the purpose of an in camera review" prior to receiving any motion or conducting a hearing may undermine public confidence in the fairness of the court-martial proceedings.

*B. Prerequisites to an In Camera Review.*

On 17 June 2015, the President signed Executive Order 13696 ("2015 Amendments to the Manual for Courts-Martial, United States"). Exec. Order No. 13696, 80 Fed. Reg. 119, 35,781 (22 Jun. 2015). Included in the executive order, which was effective immediately for any case which had not been arraigned, were substantial changes to Mil. R. Evid. 513. Military Rule of Evidence 513(e)(3) was amended to read as follows:

> (3) The military judge may examine the evidence or a proffer thereof in camera, if such examination is necessary to rule on the production or admissibility of protected records or communications. Prior to conducting an in camera review, the military judge must find by a

7

preponderance of the evidence that the moving party
showed:

(A) a specific factual basis demonstrating a
reasonable likelihood that the records or communications
would yield evidence admissible under an exception to the
privilege;

(B) that the requested information meets one of the
enumerated exceptions under subsection (d) of this rule;

(C) that the information sought is not merely
cumulative of other information available; and

(D) that the party made reasonable efforts to obtain
the same or substantially similar information through non-
privileged sources."

Exec. Order No. 13696, 80 Fed. Reg. 119, 35,819-20.

In short, the amendments substituted a requirement for specific findings in
place of what had been a somewhat nebulous rule. Prior to the June 2015
amendment, Mil. R. Evid. 513(e)(3) stated, without explanation, that a military
judge could conduct an *in camera* review "if such an examination is necessary to
rule on the motion." *See* Mil. R. Evid. 513 (*Manual for Courts-Martial, United
States* (2012 ed.)). Commentators have speculated that the amendments were needed
because *in camera* review, which is itself a limited piercing of the privilege, had
become "almost certain" upon a party's request. Major Cormac M. Smith, *Applying
the New Military Rule of Evidence 513: How Adopting Wisconsin's Interpretation of
the Psychotherapist Privilege Protects Victims and Improves Military Justice*, Army
Lawyer, Nov. 2015, at 10 (prior to its amendment, Mil. R. Evid. 513 "essentially
compelled a prudent military judge wishing to protect the record to at least review
the privileged communication in camera once a party requested production."). The
fact that the trial counsel in this case requested that the military judge order the
production of petitioner's mental health records (again, prior to receiving the
defense motion) gives credence to concerns that *in camera* review had become a
matter of routine. If such commentary is correct—and our own routine review of
court-martial records does not lead us to believe otherwise—the purpose of Mil. R.
Evid. 513 is clearly frustrated by such routine reviews. *See Jaffee v. Redmond*, 518
U.S. 1, 11-12 (1996) (without a psychotherapist privilege "confidential
conversations between psychotherapists and their patients would surely be chilled,
particularly when it is obvious that the circumstances that give rise to the need for
treatment will probably result in litigation").

C. *The Defense Motion*

The Mil. R. Evid. 513 motion[9] filed by the defense counsel did not attempt to meet the procedural requirements set forth in the amended rule and, in fact, explicitly disavowed them as being applicable.

The defense motion first argued that the recent amendment to Mil. R. Evid. 513(d)(8) (removing the "constitutionally required" exception to the privilege) was without effect. *See* 2015 NDAA, Pub. L. No. 113-291, § 535, 128 Stat. 3292, 3369. Second, the defense argued that the records contained constitutionally required material because: A) "[t]he defense's theory of the case is that [petitioner] did not like the Accused being her stepdad" and therefore fabricated the allegation against him; and B) that the "defense needs access to the alleged victim's mental health records to corroborate their theory that this allegation is false. . . . [and that] [w]ithout this material the defense will not be able to impeach and discredit the victim in this case." The motion did not identify, other than broad generalizations of possible impeachment evidence, what information they believed the records contained, stating only that the records "*may* contain constitutionally required material needed to impeach [petitioner]." (emphasis added). Nor did the motion identify with any specificity what constitutional issues were at play. The omission of any claim as to the contents of the petitioner's mental health records appears to be intentional, as the motion also argued that the procedural requirements under Mil. R. Evid. 513 are invalid when the defense is seeking constitutionally required material.[10] Instead, the defense, in its 16 September 2015 "Motion to Compel Production of Mental Health . . . Records," cited case law (predating the establishment of the privilege) that their only obligation was "showing . . . [that] the credibility of the victims was paramount to the defense and that the records *might* contain evidence of [the victim's] ability to perceive events, or evidence of their credibility in general." (citing *United States v. Reece*, 25 M.J. 93 (C.M.A. 1987) (emphasis added).

---

[9] The defense's motion was styled as a motion to compel. In addition to requesting mental health records under Mil. R. Evid. 513, the motion included requests for non-mental health records such as "academic and disciplinary records." There is a vast difference, both in substance and procedural requirements, between a motion to compel discovery filed under Rule for Courts-Martial [hereinafter R.C.M.] 905(b)(4) and a motion seeking access to privileged communications filed under Mil. R. Evid. 513. It is unwise to conflate the two.

[10] The defense motion also included an argument that the mental health records met the child abuse exception under Mil. R. Evid. 513(d)(2). The military judge rejected that argument, and review of that decision is not before us.

The defense introduced no evidence (witness testimony or otherwise) in support of the motion.[11]

The contents of a motion under Mil. R. Evid. 513 are critical. First, the military judge must "narrowly tailor" any ruling directing the production or release of records to the purposes stated in the motion. Mil. R. Evid. 513(e)(4). Second, Mil. R. Evid. 513 is not merely a rule that describes how certain types of evidence may be produced; it is also the means by which a patient is provided due process prior to the production or disclosure of privileged communications. Mil. R. Evid. 513(e)(1). Broadly, the rule provides for notice and an opportunity to be heard (i.e. due process). More specifically, timely notice is provided by the requirement that absent good cause, such a motion must be filed prior to the entry of pleas. Mil. R. Evid. 513(e)(1)(A). Substantive notice is provided by the requirement that the motion must "specifically describ[e] the evidence and stat[e] the purpose for which it is sought . . . ." *Id.* Unless impractical, the patient must be notified of the hearing and given an opportunity to be heard. Mil. R. Evid. 513(e)(2). As discussed below*,* these procedural due process rights can be frustrated when, to the surprise of both parties and the patient, a completely novel factual and legal theory is introduced at the hearing in support of breaching the privilege.

## D. The Mil. R. Evid. 513 Hearing

After rejecting the defense counsel's argument that the child abuse exception under Mil. R. Evid. 513(d)(2) would allow the defense to have access to petitioner's mental health records, the military judge confirmed that the defense did not intend to introduce any evidence.

The military judge appeared particularly concerned as to whether the government intended to introduce any evidence of petitioner's mental health at sentencing, stating to the trial counsel: "Okay. So [petitioner is] not going to get on the stand and say this is the worst thing in my life. I've had to go to counseling for the last however many years it's been, three years, because the accused did what he did to me?" Presumably, such testimony would be admissible during sentencing as direct evidence in aggravation under R.C.M. 1001(b)(4) ("Evidence in aggravation includes . . . psychological, and medical impact on . . . any person or entity who was

---

[11] "On one point there appears to be a unanimous consensus. In sexual-assault and child abuse cases, there is general agreement that a defendant must do more than speculate that, because the complainant has participated in counseling or therapy after the alleged assault, the records in question might contain statements about the incident or incidents that are inconsistent with the complainant's testimony at trial." Clifford S. Fishman, *Defense Access to A Prosecution Witness's Psychotherapy or Counseling Records*, 86 Or. L. Rev. 1, 37 (2007)

the victim of an offense . . . .").  In response to the military judge's repeated questions, the trial counsel responded he would not offer any such evidence.

To the extent that the military judge was envisioning piercing a privileged communication because of a concern about the accused's rights to impeach or confront a witness during sentencing, there is not a constitutional right of confrontation during sentencing proceedings.  *United States v. McDonald*, 55 M.J. 173, 177 (C.A.A.F. 2001) ("it is only logical to conclude that the Sixth Amendment right of confrontation does not apply to the presentencing portion of a non-capital court-martial."). While the rules of evidence provide for cross-examination of sentencing witnesses, *see* Mil. R. Evid. 611(b) and 1101(a), these are regulatory confrontation rights rather than a *constitutional* right of confrontation that could form the basis for piercing a privileged communication.

The remainder of oral argument did not address the theory of admissibility identified by the defense in their motion.  Rather, the military judge offered a novel theory of admissibility *sua sponte*.  The military judge noted that in an unrelated motion, the trial counsel had moved to introduce a journal entry written by petitioner.  The journal entry was apparently disclosed to law enforcement by mental healthcare providers because it was a required disclosure under Alaskan state law.[12] There is "no privilege" under Mil. R. Evid. 513 when state law requires such a disclosure.  Mil. R. Evid. 513(d)(3).  It does not appear that petitioner had any choice in whether to disclose the journal entry.  The journal entry, styled as a letter, was written as part of therapy and included inculpatory statements adverse to the accused that the government wanted to admit during the merits portion of trial.

The military judge advanced a theory that because one document had been disclosed from petitioner's mental health records—even one disclosed because of a state mandatory disclosure requirement—all of petitioner's mental health records were subject to review. [13]

---

[12] As the Special Victim's Counsel had no notice of the military judge's theory of admissibility prior to the hearing, it was only in his motion for reconsideration that he fully informed the military judge that the journal entry had been disclosed pursuant to Alaska Statute (AS) 47.17.020(a)(1).  After considering the SVC's motion, the military judge ruled that his prior ruling "will not be disturbed" and that "the defense must be given the opportunity to review [petitioner's] other mental health records."

[13] We offer no opinion on whether the journal entry would be admissible.  We note the military judge's concern that use of the Psychotherapist-patient privilege to selectively use (or cherry-pick) documents or statements may in some cases prohibit an accused from defending himself against alleged charges.  Though not presented in this writ, we note a military judge is under no obligation to admit such evidence if doing so would deprive the accused of a fair trial.

In granting the defense's motion for production, the military judge made several conclusions of law and fact – all of which require discussion.

### 1. Military Rule of Evidence 513(e)(3)(A)

Addressing the requirement under Mil. R. Evid. 513(e)(3)(A) that the moving party show "a specific factual basis demonstrating a reasonable likelihood that the records" yield admissible evidence, the military judge found that "the defense" had satisfied this requirement because the government intended to introduce the journal entry. The military judge determined the existence of the journal entry, (or as the judge stated "the fact that the government is attempting to introduce" the journal entry) made it reasonably likely that the remaining records "would yield some admissible evidence under an exception to Mil. R. Evid. 513. That exception being the 'constitutionally required' exception." The military judge's reasoning was flawed in several respects.

First, as there was no evidence before the court of any kind, there was little basis to determine what the records would contain, let alone conclude they contained admissible evidence.

Second, to the extent that the military judge implicitly notified the parties he was considering the journal entry as part of the motion, the journal entry was by all accounts *inculpatory*. This could perhaps lead to an inference that the records contained other inculpatory evidence. However, we cannot identify any logic to support the proposition that an inculpatory excerpt in one portion of a record makes it likely to find admissible defense evidence in another.

Third, less than four months earlier, we addressed a similar issue in yet another writ petition arising from this military judge, this time addressing the application of Mil. R. Evid. 514. *AT v. Lippert*, ARMY MISC 20150387, 2015 CCA LEXIS 257 (Army Ct. Crim. App. 11 June 2015 (summ. disp.). In that case, the victim petitioner complained of the military judge's ruling that all communications with a victim advocate were unprivileged once she made an unrestricted report. This court characterized the military judge's ruling as seeming "to declare all of the Sexual Harassment/Assault Response and Prevention (SHARP) records to be non-confidential and unprotected by Mil. R. Evid. 514." *Id.* at n.1. While this court denied the petition, we stated that "it is the victim who defines the scope of information to be disclosed to third persons . . . . *[A]nything in the judge's order that might be interpreted otherwise would be incorrect*." *Id.* at 2 (emphasis added).

Fourth, and similar to his ruling in *AT v. Lippert* declaring *all* SHARP records non-confidential because the victim made one unrestricted report, here the military

judge applied his analysis and ruling to *all* of petitioner's mental health records. According to the military judge's description of the journal entry during oral argument, the journal entry was derived from page 37 of the "Voices Workbook" where petitioner was asked to write a letter to her mother. The military judge applied his analysis not only to page 37 or the surrounding pages and related records, but to all mental health records, created both before and after the journal entry, spanning a period of years, and involving unrelated mental healthcare providers and institutions.

Accordingly, the military judge's finding that because petitioner's mental health records yielded one (unprivileged) inculpatory document, there was a reasonable likelihood that the remaining records would yield admissible defense information was clearly erroneous.

### 2. *Military Rule of Evidence 513(e)(3)(B) Enumerated Exceptions*

When addressing the second requirement, that under Mil. R. Evid. 513(e)(3)(B) the mental health record must meet one "of the enumerated exceptions," the military judge stated that the mental health records met "the constitutionally required exception." While we do not resolve this issue today, the military judge's ruling was problematic in that there is no longer an "enumerated" constitutional exception to Mil. R. Evid. 513. *See* 2015 NDAA, Pub. L. No. 113-291, § 537, 128 Stat. 3292, 3369 ("Not later than 180 days after the date of the enactment of this Act, Rule 513 of the Military Rules of Evidence shall be modified as follows . . . To strike the current exception to the privilege contained in subparagraph (d)(8) of Rule 513."); Exec. Order No. 13696, 80 Fed. Reg. at 35,819 ("Mil R. Evid. 513(d)(8) is deleted."). It is clear from the record that the military judge was well aware of this amendment at the time of his ruling. It therefore appears that the military judge must have determined that Mil. R. Evid. 513 is facially unconstitutional. If so, he did not make this determination clear, cite any authority, or explain his reasoning (either when he ruled on the record or when he reconsidered his ruling by email). Prudence suggests that a detailed analysis should accompany such a significant decision.[14]

---

[14] The significance of the deletion of Mil. R. Evid. 513(d)(8) is certainly subject to reasonable debate, likely focused on whether the resulting rule creates a "qualified" or "unqualified" privilege. *Compare Jaffee*, 518 U.S. 1 *with Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) and *Davis v. Alaska*, 415 U.S. 308 (1974). The Supreme Court has not yet held that there is a constitutional right to *discover* impeachment evidence that is not in the possession of the government. *See Commonwealth v. Barroso*, 122 S.W.3d 554, 561 (Ky. 2003) (summarizing relevant Supreme Court case law). While military defendants enjoy broader *statutory* discovery rights than their federal court peers, the discovery provisions of Article 46, UCMJ, are not a basis for determining that discovery is *constitutionally* required. The constitutional

> The presumption is that a rule of evidence is constitutional unless lack of constitutionality is clearly and unmistakably shown. *National Endowment for the Arts v. Finley,* 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) ("Facial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'"); *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Appellant must show that [the challenged rule] "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 43–45, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (examining historical practices on due process challenges).

*United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000). While we would review *de novo* a determination that a rule is unconstitutional, the lack of accompanying analysis makes this impossible, and we leave resolution of this issue for another day when the issue is more fully developed.

### 3. Cumulative Nature of Records

Turning to the third requirement under Mil. R. Evid. 513(e)(3)(C) that the information in the mental health records must not be cumulative, we are again at a loss to understand the military judge's reasoning. Given that there was no evidence (or even a proffer) to the contents of petitioner's mental health records, or of the other evidence the defense intended to introduce, it was likely impossible for the

---

issues are unusual with regards to Mil. R. Evid. 513 in that the rule is the result of *both* a legislative and executive act. *See* 2015 NDAA, § 537; Exec. Order No. 13696. Accordingly, the President was likely at the apex of his authority in implementing Mil. R. Evid. 513 as he acted in his constitutional role as Commander in Chief and under a specific legislative direction. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635-37 (1952) (Jackson, J., concurring) ("When the President acts pursuant to an express or implied authorization of Congress, his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate. In these circumstances, and in these only, may he be said (for what it may be worth), to personify the federal sovereignty. If his act is held unconstitutional under these circumstances, it usually means that the Federal Government as an undivided whole lacks power.").

military judge to determine whether the records were cumulative with other defense evidence.[15]  Rather, the military judge stated that he found that *all* the mental health records were not cumulative because the trial counsel was seeking to introduce the journal entry.  That is, as the military judge found the government had a single (unprivileged) document that was arguably not cumulative with other *prosecution* evidence, he determined that all of the mental health records were not cumulative with whatever evidence the defense may have sought to introduce.  This simply does not follow and was a clear abuse of discretion.

### 4. *Non-privileged Sources of Information*

The fourth requirement under Mil. R. Evid. 513(e)(3), that the moving party make reasonable efforts to obtain the information by other non-privileged sources, is again problematic in this case.  Here, the military judge found the defense had made reasonable efforts to obtain the information by asking petitioner's mental healthcare providers about petitioner's treatment and behavior while in their care.  He noted that "quite naturally" they did not respond favorably to those requests.  This analysis missed the point of the fourth requirement.  The purpose of this requirement is not to find other means of determining the contents of the mental health records—after all the defense was not seeking mental health records for the sake of them being mental health records—the purpose is to see if the underlying information (e.g., evidence regarding credibility) purportedly contained in the records can be adequately obtained from *non-privileged* sources.  For example, in their motion, the defense sought the mental health records because they hoped the mental health records contained information undermining petitioner's credibility and highlighting her dislike of the accused.  As to this "information," the relevant inquiry was whether other *non-privileged* sources (e.g., emails, texts, and the testimony of family members, friends, associates, etc.) could establish this same information without resorting to piercing a privilege.

### 5. *Narrowly Tailored Production and Disclosure*

Even were we to assume the defense had met the threshold for an *in camera* review of some portion of petitioner's mental health records, the decision of the military judge was overbroad.  Military Rule of Evidence 513(e)(4) reads as follows:

> (4) Any production or disclosure permitted by the military judge under this rule must be narrowly tailored to only the specific records or communications, or portions

---

[15] We note that the rule presumes that before addressing whether the records are cumulative the moving party has already filed a motion "specifically describing the evidence . . . ." Mil. R. Evid. 513(e)(1)(A); *see also* Mil. R. Evid. 513(e)(3)(1)(A). By holding the moving party to this standard, the military judge is better positioned to apply the rule to the facts of the case.

> of such records or communications, that meet the
> requirements for one of the enumerated exceptions to the
> privilege under subsection (d) of this Rule and are
> included in the stated purpose for which the records or
> communications are sought under subsection (e)(1)(A)
> [requiring a specific description of the evidence sought in
> the moving party's motion] of this Rule.

As previously discussed, the military judge conducted an *in camera* review of all of petitioner's mental health records. Nowhere in his ruling did the military judge tailor his decision to release a specific type of record or communication or explain his reasoning as to how he determined a document was releasable.

Rather, in ruling on the motion for reconsideration, the military judge stated that under the constitutional principles of "fundamental fairness and due process, the defense must be given the opportunity to review [petitioner's] other mental health records for other potentially admissible evidence." That is, instead of the page-by-page, communication-by-communication analysis as to whether an exception to a privilege under Mil. R. Evid. 513 applies, the military judge appears to have made a blanket determination that all of petitioner's mental health records were unprivileged and subject to disclosure and review by the defense.

### 6. *Privilege versus Discovery*

Finally, and more broadly, we are concerned that the military judge confused an accused's right to discovery under Rule for Courts-Martial 701 and Article 46, UCMJ, with the prerequisites for disclosing a privileged communication under Mil. R. Evid. 513. For example, during his discussions with the trial counsel during oral argument, the military judge appeared to analogize the issue in front of him as one of discovery:

> MJ: Okay. Absent - - all things being equal, you go into a
> file, pull out [a] piece of evidence you want to introduce
> into court, right? Wouldn't the defense be entitled to the
> opportunity to review the rest of the file to see what was
> there?
>
> TC: But----
>
> MJ: Isn't that true?

Similarly, in his initial ruling releasing the mental health records, the military judge ruled that "[t]here are numerous pages of *discoverable* material" and that the "Court will deliver the *discoverable* material . . . for disclosure to defense."

In reconsidering his ruling, the military judge again appears to confuse the standard stating that "the defense must be given the opportunity to review [petitioner's] other mental health records for *potentially* admissible evidence."

It is axiomatic that if a privileged communication is disclosed whenever it would be subject to the rules governing discovery then there is no privilege at all. As the Supreme Court said in *Ritchie*, "[i]f we were to accept this broad interpretation . . . the effect would be to transform the Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view." 480 U.S. at 52 (plurality opinion).

## V. CONCLUSION

In light of the above, we are firmly convinced that petitioner has demonstrated she has no other means to obtain relief, that the right to relief is clear and indisputable, and that relief is appropriate. As the military judge's ruling under Mil. R. Evid. 513 was a clear abuse of discretion, it is set aside. The effect of this ruling is to restore the disclosed records to their privileged status. That is, petitioner may "prevent another from being a witness or disclosing any matter or producing any object or writing." Mil. R. Evid. 501(b)(4); *see also* Mil. R. Evid. 511(a) (disclosure of privileged matter not admissible against the privilege holder if disclosure was erroneous or compelled); 513(a). However, we decline to determine, as petitioner asks, that the disclosed records be deemed inadmissible at trial. There has not yet been a proceeding or determination that correctly applies the procedural and substantive requirements of Mil. R. Evid. 513 to the facts of this case. During the closed hearing held pursuant to Mil. R. Evid. 513, the defense never had a chance to discuss their theory of admissibility. Accordingly, we offer no opinion as to whether any of petitioner's mental health records may be subject to disclosure and admissible at trial after a proper hearing under Mil. R. Evid. 513. To ensure that the accused has the benefit of such a determination, we do not preclude him from addressing the issue anew.

Petitioner's writ petition is GRANTED in part and the military judge's ruling under Mil. R. Evid. 513 is set aside. The stay ordered by this court on 30 November 2015 is hereby lifted. The petition is DENIED in that the admissibility of petitioner's mental health records may be determined after a properly conducted hearing under Mil. R. Evid. 513 and other applicable rules of evidence.

17

DUCKSWORTH – ARMY MISC 20150769

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court